**Irma HOWARD, et al.,
Plaintiffs-Appellants,**

v.

**Samuel PIERCE, Secretary of the Department of Housing and Urban Development, and Grand Rapids Housing Commission, et al., Defendants-Appellees.**

No. 82–1960.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 27, 1984.

Decided June 27, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 11, 1984.

Michael Nelson (argued), Legal Aid of Western Michigan, Grand Rapids, Mich., for plaintiffs-appellants.

Preston Hopson, Jr., Asst. City Atty., (argued), Grand Rapids, Mich., Thomas H. Peebles, U.S. Dept. of Justice, Civ. Div., Jonathan Strong, Dept. of H.U.D., Anthony J. Steinmeyer, Peter R. Maier (argued), Dept. of Justice, Civ. Div., Washington, D.C., for defendants-appellees.

James R. Grow, National Housing Law Project, Berkeley, Cal., for amicus curiae.

Before ENGEL and CONTIE, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Irma Howard, (plaintiff-appellant) brought this action against the Secretary of the Department of Housing and Urban Development (HUD) and the Grand Rapids Housing Commission (GRHC) (defendants-appellees) seeking to enjoin an alleged violation of the Brooke Amendment of the United States Housing Act of 1937 (Act). 42 U.S.C. Sec. 1437a. The issue in this case is whether tenants of low income housing may enforce the Brooke Amendment through private litigation. The district court determined that no private right of action exists under the Brooke Amendment and dismissed the suit; Howard appeals this dismissal.

The facts of this case are not in dispute. Howard is a tenant in a federally subsidized low income housing project which is owned and operated by GRHC. She receives public assistance benefits from the Michigan Department of Social Services (MDSS). A portion of the assistance payments are allocated specifically for housing. Howard's rent was calculated according to the amount paid for housing by MDSS. In other words, the amount paid by MDSS to Howard for housing was the amount charged by GRHC for rent. On April 1, 1981, MDSS began a series of ratable reductions in public assistance payments and, as a result of these reductions, GRHC's charge for rent exceeded MDSS' payment for shelter.[1] Howard filed suit on May 17, 1982 to enjoin GRHC from charging rent in excess of the amount received from MDSS for housing.[2]

---

1. MDSS calculates a family's financial needs by adding together budget items, such as housing. However, because of limited state funds, the total amount allocated by MDSS is reduced by a percentage factor. Thus, recipients are paid an amount less than that actually allocated.

2. In her complaint dated May 6, 1982, Howard brought an action against GRHC based upon an alleged violation of the Brooke Amendment. Subsequent to the filing of that complaint, Howard either amended, or attempted to amend, her complaint twice. In her amended complaint, Howard added MDSS as a defendant and sought to enjoin MDSS from imposing the second ratable reduction. Nowhere in either the original complaint or the two subsequent amended complaints has Howard alleged a cause of action other than one based upon a violation of the Brooke Amendment. Six months and two amended complaints after the filing of the origi-

nal complaint, and after the court had rendered judgment on the defendants' motion to dismiss, Howard filed a motion to alter or amend judgment in which she alleged that she "may have a cause of action against GRHC under 42 U.S.C. Sec. 1983." In our view, the pleadings were insufficient to place GRHC on notice of this cause of action. Accordingly, the denial of Howard's motion to alter or amend is affirmed.

Howard also argues that the Administrative Procedure Act, 5 U.S.C. Sec. 551 *et seq.,* provides tenants of low income housing with a right to judicial review of HUD's action in promulgating 24 CFR 860.404. In fact, HUD argues that the proper method of challenging the regulation would be under the Administrative Procedure Act. However, Howard first raised this issue in her reply brief filed with this court on July 25, 1983. Accordingly, the issue is not properly before this court.

Two weeks prior to the filing of this action HUD had announced formally a policy of requiring public housing authorities to reduce a tenant's rent once in response to a lowering of public assistance benefits for shelter. 47 Fed.Reg. 19120, 19121 (May 4, 1982). HUD's policy provides:

> If the family's welfare assistance is ratably reduced from the standard of need by applying a percentage, the amount of rent calculated ... shall be the amount resulting from *one application* of the percentage. 24 CFR 860.404. (emphasis added).

Subsequent to the filing of Howard's action, GRHC agreed to reduce rents to reflect a single reduction in public assistance benefits. MDSS, however, imposed a second ratable reduction. Relying on 24 C.F.R. 860.404, GRHC refused to lower Howard's rent in accordance with MDSS' second ratable reduction. Thus, Howard continued to pay rent in excess of the MDSS payment for shelter. According to Howard, HUD's policy, which permits GRHC to charge rent in excess of the public assistance payments for shelter, and GRHC's rent, which exceeds the statutory limits, violate the Brooke Amendment. The Brooke Amendment contains no express remedy for such a violation; Howard believes that such a remedy may be implied properly.

 In determining whether a private remedy may be implied from a statute when legislation does not provide expressly for such remedy, a court must focus on congressional intent.[3] *E.g., Texas Instruments, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 377, 102 S.Ct. 1825, 1838, 72 L.Ed.2d 182 (1982); *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981); *Jennings v. Alexander*, 715 F.2d 1036 (6th Cir.1983). In 1975, a unanimous Supreme Court set forth four factors which are relevant in determining whether Congress intended to create a private remedy. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See also, Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979) ("[B]efore concluding that Congress intended to make a remedy available to a special class of litigants, a court must carefully analyze the four factors that *Cort* identifies as indicative of such an intent."). First, a court must determine whether the plaintiff is among the class of persons which Congress intended to benefit by enactment of the statute. In this regard, a court must conclude not only that there is a specific class of beneficiaries, but also, that "Congress intended to confer federal rights upon these beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981). Second, courts must determine whether there is any legislative intent either to deny or to provide a private remedy. Generally, this second inquiry requires an analysis of the statute's legislative history. Third, a court must ascertain whether the existence of a private remedy would be consistent with the "underlying purposes of the legislative scheme." *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). Finally, courts must consider whether the action is one more appropriately a concern of state rather than federal law.[4]

---

3. The question whether Congress intended to create an implied cause of action is one which has arisen with increasing frequency. *See Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 13 n. 21, 101 S.Ct. 2615, 2622 n. 21, 69 L.Ed.2d 435 (1981). The far more efficient approach to this problem would be for Congress to express clearly its intent either in the plain language of the statute or in the legislative history.

4. Both HUD and GRHC argue for the application of a modified *Cort* analysis. According to HUD, the first *Cort* factor "has taken on less importance" and the third and fourth factors "have become practically irrelevant" in ascertaining congressional intent to imply a private right of action. We disagree. The Supreme Court has recently reaffirmed the use of the *Cort* analysis. *Daily Income Fund, Inc. v. Fox,* — U.S. ——, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984) (In determining whether Congress in-

■ The first area of consideration in the determination of congressional intent is the statutory language. *E.g., California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981); *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981); *Universities Research Assn., Inc. v. Coutu,* 450 U.S. 754, 771, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). The Brooke Amendment, 42 U.S.C. Sec. 1437a(a), provides:

Dwelling units assisted under this chapter shall be rented only to families who are lower income families at the time of their initial occupancy of such units. A family shall pay as rent for a dwelling unit assisted under this chapter the highest of the following amounts, rounded to the nearest dollar:

(1) 30 per centum of the family's monthly adjusted income;

(2) 10 per centum of the family's monthly income; or

(3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

This relevant portion of the Brooke Amendment sets a limit on rent chargeable to tenants of low income housing. The rent limitation is the primary means of achieving the Act's broad policy of assisting the states in remedying "the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income." 42 U.S.C. 1437. From this language we

must determine whether Congress intended to create a specific class of beneficiaries which includes Howard, and, if so, whether Congress intended to confer federal rights upon such beneficiaries.

Clearly, the intended beneficiaries of the Brooke Amendment in particular and the Act in general are low income tenants of public housing. *Stone v. District of Columbia,* 572 F.Supp. 976, 980 (D.D.C.1983) ("To be sure, [public housing tenants] are among the intended beneficiaries of [the Brooke Amendment].''). *See Perry v. Housing Authority of the City of Charleston,* 664 F.2d 1210, 1213 (4th Cir.1981) ("[T]here is no question but that low income tenants were desired beneficiaries of [the Housing Act]"); *Falzarano v. United States,* 607 F.2d 506, 509 (1st Cir.1979) ("Low and moderate income tenants are indisputably the prime beneficiaries of the National Housing Act"); *M.B. Guran Company, Inc. v. City of Akron,* 546 F.2d 201, 204 (6th Cir.1976) (Housing Act enacted for benefit of "persons who inhabit inadequate housing"). The more difficult question is whether the Brooke Amendment was intended by Congress to confer enforceable federal rights upon low income tenants.[5]

■ The question whether a plaintiff is an intended beneficiary of a statute and the question whether a statute creates enforceable federal rights are related. Invariably, if a statute is found to establish a federal right in favor of the plaintiff, the plaintiff will be an "intended beneficiary" of the statute. However, the converse is not true necessarily. *See Universities Research Assn., Inc. v. Coutu,* 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The Supreme Court has been reluctant to

---

tended to allow an implied cause of action a court must examine "the legislative history and purpose of the statute, the identity of the class for whose particular benefit the statute was passed, the existence of express statutory remedies adequate to serve the legislative purpose, and the traditional role of the states in affording the relief claimed.").

**5.** The Supreme Court considers the "right- or duty-creating-language" of a statute to be "the most accurate indicator of the propriety of implication of a cause of action." *Cannon v. University of Chicago,* 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979).

imply a cause of action under statutes which create benefits for the general public. *E.g., Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). For example, absent specific language, one may not argue that a particular statute creates enforceable federal rights simply because the primary purpose of the statute is to benefit the public at large. *See, e.g., Cannon v. University of Chicago,* 441 U.S. 677, 690–92, 99 S.Ct. 1946, 1954–55, 60 L.Ed.2d 560 (1972). Although the plaintiff may be a member of the public and thus an intended beneficiary of the statute, the likelihood that Congress intended members of the general public to enforce such statutes is not great. In contrast, the inference that Congress intended to create legally enforceable rights is strongest when the statutory language focuses unmistakably on a specific and identifiable class of beneficiaries. *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 91–92, 101 S.Ct. 1571, 1580–1581, 67 L.Ed.2d 750 (1981); *Cannon v. University of Chicago,* 441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979). Accordingly, an implied cause of action may be found when language in the pertinent statute expresses an "unmistakable focus on the benefited class" of which the plaintiff is a member. *Cannon v. University of Chicago,* 441 U.S. 677, 691, 99 S.Ct. 1946, 1955, 60 L.Ed.2d 560 (1979). *See Northwest Airlines Inc. v. Transport Workers Union of America,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981); *Boatowners and Tenants Association, Inc. v. Port of Seattle,* 716 F.2d 669, 673 n. 5 (9th Cir.1983) (special benefit test satisfied when statute places "unmistakable focus on the benefited class"); *Limongelli v. Postmaster General of United States,* 707 F.2d 368, 371 (9th Cir.1983) (first *Cort* factor satisfied when statute unmistakably focuses on benefited class); *Hofbauer v. Northwestern National Bank of Rochester, Minnesota,* 700 F.2d 1197, 1200 (8th Cir.1983) (implied cause of action exists when plaintiff shows he is in class of intended beneficiaries and statute was drafted with "unmistakable focus on the benefited class").

■ In our view, the language of the Brooke Amendment does place an "unmistakable focus" upon low income tenants. First, the statutory language mandates that public housing units, such as those leased by GRHC, "shall be rented *only* to families who are *lower income families.*" 42 U.S.C. Sec. 1437a(a). (emphasis added). Lower income families are an easily identifiable class which Congress has defined in a narrow manner.[6] Because only they may be admitted to federally subsidized low income housing, lower income families have a particularized interest in the rent limitation enacted on their behalf. In contrast, the specific nature of Congress' language does not extend such a particularized interest to the general public. Thus, the plain language of the statute demonstrates that Congress did not intend to benefit the public at large, but rather, lower income families.[7]

Second, the language mandates that rent be calculated in a particular manner de-

6. 42 U.S.C. Sec. 1347a(b)(2) provides:

(2) The term "lower income families" means those families whose incomes do not exceed 80 per centum of the median income for the area, as determined by the Secretary with adjustments for smaller and larger families, except that the Secretary may establish income ceilings higher or lower than 80 per centum of the median for the area on the basis of the Secretary's findings that such variations are necessary because of prevailing levels of construction costs or unusually high or low family incomes. The term "very low-income families" means lower income families whose incomes do not exceed 50 per cen-

tum of the median family income for the area, as determined by the Secretary with adjustments for smaller and larger families.

7. HUD argues that the several states are the intended beneficiaries of the Brooke Amendment. We disagree. The plain language of the statute focuses clearly on the amount of rental payments to be made by low income tenants. Rent concerns the tenants, not the states. Moreover, federal subsidies are made to local housing authorities so that rent can be maintained at the statutory level. Accordingly, the focus of the Brooke Amendment is upon the lower income tenants, not the states.

signed to benefit specifically lower income families.[8] The Brooke Amendment's essential feature, rent limitation, is the device chosen by Congress to ensure that lower income families are housed affordably. The maximum chargeable rent is tailored to the *family's* financial condition. For example, if a family receives welfare assistance, a portion of which is allocated specifically for shelter, the amount of rent charged can be no greater than the amount of assistance payments designed to cover housing costs. In choosing to limit the maximum amount of rent that a public housing authority could charge low income tenants, Congress ensured that the intended beneficiaries would be protected from arbitrary rent increases. Thus, the focus is on low income tenants and the maximum amount of rent they can be charged for decent, safe housing.

In summary, the lower income families who reside in public housing are the intended beneficiaries of the Brooke Amendment. These low income tenants are the unmistakable focus of the Brooke Amendment because only they may live in low income housing and receive the benefits of the rent limitation.[9] Accordingly, we conclude that the first *Cort* factor weighs in favor of the implication of a cause of action.[10]

We have examined fully the legislative history in an effort to discover some evidence of congressional intent to provide or deny a private means of enforcing the Brooke Amendment. Generally, when the statutory language is silent regarding a private right of action, the legislative history is also silent. *See Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). This case presents no exception to the rule; nowhere in the legislative history have we uncovered an expression of intent either to provide or deny a private means of enforcing the Brooke Amendment. *See Stone v. District of Columbia*, 572 F.Supp. 976, 980 (D.D.C. 1983). Of course, Congress has stated that HUD "may sue and be sued" under the provisions providing for low income housing. 42 U.S.C. Sec. 1404a. This waiver of sovereign immunity is some evidence of a general intent to permit an action against

---

**8.** The language sets a ceiling on the amount of rent chargeable to low income tenants, depending upon their financial circumstances. When the statutory language merely prohibits certain general activity or represents a directive that an agency perform a ministerial task, implication if a private cause of action is not appropriate. *E.g., California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In this instance, however, we do not view the language of the Brooke Amendment as a mere directive or prohibition of general conduct.

**9.** We recognize that the Fourth Circuit has determined that although low income tenants are the "desired beneficiaries" of the Act, an implied cause of action must be based on a substantive provision of the Act, rather than on a provision which expresses policy. *Perry v. Housing Authority of the City of Charleston*, 664 F.2d 1210, 1213 (4th Cir.1981). The *Perry* court concluded that the Act's policy declaration, 42 U.S.C. Sec. 1437, which expresses the congressional goal of remedying the "acute shortage of decent, safe, and sanitary dwellings for families of low income", does not provide a cause of action. We agree. Section 1437 is merely a policy statement; the Brooke Amendment, on the other hand, is a substantive provision which does con-

fer rights. Accordingly, the *Perry* decision is inapposite.

At least one other court has concluded that the Brooke Amendment confers upon families of low income a "legitimate claim" that they should receive the benefits of low income housing at the rental rate prescribed by Congress. *McGhee v. Housing Authority of the City of Lanett*, 543 F.Supp. 607, 608 (M.D.Ala.1982). However, the *McGhee* court went on to determine that no cause of action against a *public housing authority* may be implied under the Brooke Amendment. We agree with the *McGhee* court that the Brooke Amendment provides no implied cause of action against public housing authorities. *See* text accompanying note 15, *infra.* We also agree with the *McGhee* court's assessment that implication of a private remedy against HUD presents different considerations. *See* note 11, *infra.*

**10.** We are aware that when "the language of the statute explicitly confer[s] a right directly on a class of persons that includes the plaintiff", the Supreme Court has readily found the existence of an implied cause of action. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 391 n. 91, 102 S.Ct. 1825, 1845 n. 91, 72 L.Ed.2d 182 (1982), quoting *Cannon v. University of Chicago*, 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979).

HUD.[11] The sovereign immunity provision does not, however, indicate whether Congress intended private enforcement of any particular section of the Act. Thus, although the legislative silence and the statutory provision waiving sovereign immunity support the conclusion that Congress did not intend to *deny* the intended beneficiaries of the Brooke Amendment a private cause of action, no further conclusions concerning Congress' intent can be made convincingly from the legislative history of the Act.

Having determined that low income families are the intended beneficiaries of the Brooke Amendment, that federal rights have been conferred upon these beneficiaries and that nothing in the legislative history suggests that Congress intended to deny these beneficiaries a private remedy, we now consider the scheme of the Act. Clearly, a private remedy which would interfere with the Act's underlying purpose could not be implied. However, the Supreme Court has considered itself "decidedly receptive" to an implied remedy when the remedy "is necessary or at least helpful to the accomplishment of the statutory purpose." *Cannon v. University of Chicago*, 441 U.S. 677, 703, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979). The purpose of the Act is to provide decent, safe, sanitary, and affordable housing to families of low income.[12] 42 U.S.C. Sec. 1437. We believe that the implication of an implied private cause of action in this instance will assist in meeting that goal. Moreover, the nature of the relief requested obviates any concern about undue interference with the purposes of the Act.

The Brooke Amendment was a response to Congress' concern that "the neediest families had been excluded from the public housing program."[13] S.Rep. No. 91–392, 91st Cong., 1st Sess. (1969), *reprinted in* [1969] U.S. Code Cong. and Ad.News 1524, 1542. The debate attendant to the enactment of the Brooke Amendment emphasized Congress' desire to further the goals of the Act by ensuring the low-rent character of public housing. *Fletcher v. Housing Authority of Louisville*, 491 F.2d 793, 806 (6th Cir.1974), *vacated and remanded*, 419 U.S. 812, 95 S.Ct. 27, 42 L.Ed.2d 39 (1974), *reinstated on remand*, 525 F.2d 532 (6th Cir.1975). In its report, the Senate Banking and Currency Committee noted clearly its intent to enable families to afford low income housing. S.Rep. No. 91–392, 91st Cong., 1st Sess. (1969), *reprinted in* [1969] U.S. Code Cong. and Ad.News 1524, 1542. Recognizing that the costs of operating and maintaining public housing would be "too high for the very poor to bear," Congress authorized HUD to pay public housing authorities the difference between the costs of operation and the amount collected from tenants for rent. Thus, the Brooke Amendment's rent limitation provision became the essential feature of the public housing program. Essentially, Howard asserts that HUD has failed to ensure the

---

**11.** Even though both HUD and the GRHC cite *McGhee v. Housing Authority of the City of Lanett*, 543 F.Supp. 607 (M.D.Ala.1982) for the proposition that no implied cause of action arises from the Brooke Amendment, the *McGhee* court found this true only as to the public housing authority; HUD was not a party to the lawsuit. In fact, the *McGhee* court acknowledged that while the waiver of sovereign immunity cannot be construed to allow private suits against a public housing authority, it may indicate congressional intent to allow such a suit against HUD.

Similarly, the court in *Stone v. District of Columbia*, 572 F.Supp. 976 (D.D.C.1983), only decided that the Brooke Amendment allowed no private cause of action against a public housing authority; HUD had been dismissed as a defendant for other reasons. Accordingly, even though the Brooke Amendment may not support private litigation against a public housing authority, we are aware of no court that has determined that a private cause of action cannot arise against HUD.

**12.** This commitment was reaffirmed in the legislative history accompanying the Housing and Community Development Amendments of 1979. H.Rep. No. 96–154, 96th Cong., 1st Sess. 1979, *reprinted in* [1979] U.S.Code Cong. and Ad. News 2317.

**13.** The first Brooke Amendment limited the amount of rent which a local public housing authority could charge a low income tenant to one-fourth of his income. Pub.L. 91–152, Sec. 213(a), 83 Stat. 389 (1969).

low-rent character of public housing because it promulgated a regulation which undermines completely the effectiveness of the Brooke Amendment's primary feature. Because the relief sought concerns the preservation of the Brooke Amendment's principal provision, and because the Brooke Amendment is critical to the accomplishment of the Act's primary goal, we believe that such relief, if warranted, would be consistent with the scheme of the Act.

In our view, the implication of a private remedy would promote a subsidiary congressional policy as well. In 1974, when Congress amended the Brooke Amendment to include the welfare rent provision, Pub. I. No. 93–383, Sec. 201(a), 88 Stat. 654 (1974), *now codified at* 42 U.S.C. Sec. 1437a(a)(3), it did so to "encourage" the negotiation of rents between housing and welfare agencies. H.R.Rep. 1114, 93rd Cong., 2d Sess.—(1974), as reprinted in COMPILATION OF THE HOUSING AND COMMUNITY DEVELOPMENT ACT OF 1974, SUBCOMMITTEE ON HOUSING OF THE HOUSE COMMITTEE ON BANKING AND CURRENCY, 93rd Cong., 2d Sess. 374 (October 1974). We believe that equitable relief, if warranted, would encourage such negotiations. In the absence of a regulation allowing a public housing authority to maintain rent following a ratable reduction in assistance for housing, unilateral action by either agency would affect the other. A regulation which would disturb the relative bargaining positions of the parties would, therefore, frustrate Congress' policy of encouraging negotiations between welfare and public housing agencies.

We are persuaded by yet another factor that implication of a private remedy is consistent with the scheme of the Act. Conspicuously absent from the Act are private enforcement mechanisms. We do not believe that Congress established the goal of providing decent housing only to allow the goal to be frustrated by statutory violations. Thus, unlike other enactments which provide for elaborate enforcement of various provisions and, therefore, permit the inference that silence in another provision precludes implication of a private remedy, we cannot assume that legislative silence in an act which provides no elaborate enforcement provisions indicates a congressional intent to preclude enforcement of every substantive provision. *See Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 14, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 573, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1979). For example, if other provisions in the Act granted explicitly a cause of action, and the Brooke Amendment was silent, we would assume that Congress' silence was intentional and, therefore, an implied cause of action would not be consistent with the scheme of the Act. *See Touche Ross & Co. v. Redington,* 442 U.S. 560 (1979). However, we are not presented with such a situation; the Act nowhere explicitly permits a private cause of action. In our view, the absence of any explicit private remedy is some indication that Congress did not preclude intentionally such a remedy.[14]

Finally, the nature of the relief sought obviates any concern that implying a remedy would be inconsistent with the purposes of the Act. This court has held that the nature of the relief requested is a relevant factor to consider in determining whether the implication of a remedy is appropriate. *Mobil Corp. v. Marathon Oil Co.,* 669 F.2d 366, 371–372 (6th Cir.1981). *See Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 42, 97 S.Ct. 926, 949, 51 L.Ed.2d 124 (1977); *Hanna Mining Company v. Norcen Energy Resources Ltd.,* 574 F.Supp. 1172, 1192 (N.D.Ohio 1982). In this case, the plaintiff seeks only injunctive and declaratory relief.

---

**14.** The Secretary of HUD is granted remedies for substantial breaches of contract. However, these narrow remedies would be, at best, indirectly beneficial to Howard under the circumstances, because HUD believes that its regulation does not violate the Brooke Amendment.

Moreover, the grievance procedures set forth by 24 CFR 866.50 *et seq.,* would provide no relief in this case in light of the regulation requiring only one reduction in rent to correspond with a reduction in payments for shelter.

Although we doubt seriously that an implied action for damages would be appropriate, we believe that declaratory and injunctive relief will further substantially the purposes of the Brooke Amendment without affecting adversely HUD's primary enforcement responsibilities. First, an action for equitable relief will ensure that the beneficiaries of the rent limitation will have an adequate *opportunity* to protect the rights conferred upon them. Second, if Howard's allegations are proven, this type of action will serve to further the primary goal of ensuring that low income families are provided with decent, safe housing. In this regard, we note that relief in the nature of a writ of mandamus has not been requested. In our view, such relief, if granted, might interfere with HUD's discretionary powers. The most we are allowing, if Howard establishes that the challenged regulation is inconsistent with the Brooke Amendment, is relief which would prohibit HUD from acting illegally.

In short, the thrust of the relief requested in this case concerns the preservation of the Brooke Amendment's principal provision. This rent limitation provision is the backbone of the public housing program. The plaintiff asks the court to declare that HUD has acted beyond its authority in promulgating 24 CFR 860.404 and seeks to enjoin HUD from sanctioning officially conduct which arguably violates the plain language of the Brooke Amendment. If the plaintiff's assertion is true, the relief granted by a federal court can do no more than preclude illegal activity on the part of a federal agency. Such limited relief would not interfere seriously with the agency's scope of responsibilities under the Act. Indeed, if plaintiff's allegations are proven,

declaratory and injunctive relief will be consistent necessarily with the scheme of the Brooke Amendment in particular, and the Act in general. Accordingly, we find that the limited relief requested, if warranted, will further the primary purpose of the Act to provide decent, safe, sanitary and affordable housing to the families of low income without any interference with HUD's discretionary responsibilities.[15]

■ While we find ample reasons to imply a cause of action against HUD, we can discern no justification for extending such a cause of action to a public housing agency such as GRHC. The policy of providing decent and affordable housing is federal in nature and, as a municipal corporation, GRHC is not required to adopt such a policy. In addition, while Congress may have indicated an intention to allow suit against HUD by waiving sovereign immunity, we have found no similar evidence of intent to allow an implied cause of action against a local public housing authority. *See McGhee v. Housing Authority of the City of Lanett*, 543 F.Supp. 607 (M.D.Ala. 1982). Finally, HUD itself acknowledges that it is the agency responsible for enforcing provisions of the Act.

The plain language of the Brooke Amendment demonstrates convincingly that Congress focused unmistakably upon low income tenants of public housing in enacting the rent limitation. The focus on limited rents for families of low income suggests strongly congressional acceptance of judicial enforcement. Reversal of the district court's judgment dismissing Howard's complaint is essential to ensure that the beneficiaries of the Act have access to

---

**15.** The final *Cort* factor requires a determination as to whether an implied remedy would intrude in an area traditionally left to state regulation. This case does not present, as HUD and the GRHC suggest, merely a question concerning landlord-tenant law. Since the Act's inception in 1937, the national policy has been to provide housing for the poor. Moreover, the expenditure of federal funds justifies imposition of the rent ceiling. The GRHC finances the development or acquisition of public housing projects by selling bonds backed by the federal government. These bonds are paid off by annual contributions made by HUD to GRHC pursuant to an annual contribution contract. *See generally* U.S.C. Sec. 1437d. HUD also provides annual operating subsidies to public housing authorities through the annual contributions contract to enable them to operate public housing while charging limited rent. These contributions are for the purpose of assuring the "lower income character" of the housing. 42 U.S.C. Sec. 1437c(a); 42 U.S.C. Sec. 1437g(a)(1).

the courts in order to determine whether governmental violations of the Brooke Amendment exist. We emphasize, however, the narrow relief which may be granted on remand; the district court shall determine whether HUD has acted beyond the scope of its authority in promulgating 24 C.F.R. 860.404. If HUD has acted illegally, the district court may grant declaratory and injunctive relief. As to whether the regulation is consistent or inconsistent with the Brooke Amendment, we make no determination; this is the issue to be decided on remand.[16]

The judgment of the district court is reversed and this case is remanded for further proceedings consistent with this opinion.

ENGEL, Circuit Judge, dissenting.

Although the majority opinion purports to create only a very narrow private cause of action to permit enforcement of the Brooke Amendment through private litigation, I find myself unable to agree and therefore respectfully dissent.

I find myself in full agreement with the brief but entirely appropriate opinion filed in the district court by United States District Judge Benjamin F. Gibson and particularly with his observation:

The legislative history of the Brooke Amendment is silent on the question of whether Congress intended to create a private right of action. This Court is not prepared to find that such a right exists without some statement evincing Congressional intent.

The Housing Act has been in existence in one form or another since 1937, and the Brooke Amendment itself has been in effect since 1969. There is a singular lack of any expression of congressional intent to accord a private cause of action, even if limited to injunctive relief. As Judge Gibson noted, the test in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), has been at least modified and is most appropriately described now as "whether Congress

intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). I find it significant that the Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), upheld the existence of an implied private cause of action under the Commodities Exchange Act only by a bare majority of the Court, and this in the face of a substantial history of previous recognition in the federal courts of an implied private cause of action. Given the increasing reluctance of the Supreme Court to create implied causes of action in the absence of any express congressional indication to do so, I believe that Judge Gibson's decision more nearly represents current legal and judicial thought.

I would affirm.

**16.** We emphasize that we do not foreclose the possibility that the district court may conclude

that the regulation in question does not violate the Brooke Amendment.