**Brenda E. WRIGHT, et al., Plaintiffs,**

v.

**CITY OF ROANOKE REDEVELOP-
MENT AND HOUSING
AUTHORITY, Defendant.**

**Civ. A. No. 82–0908.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Dec. 21, 1984.

Henry L. Woodward, Claude M. Lauck, Legal Aid Society of Roanoke Valley, Roanoke, Va., for plaintiffs.

Thomas T. Lawson, Bayard E. Harris, Mary M. Hutcheson, Woods, Rogers, Muse,

Walker & Thornton, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

On December 8, 1982, Plaintiffs, who are tenants of public low-cost housing, filed suit in this court against their landlord, the City of Roanoke Redevelopment and Housing Authority[1] ("RRHA"). In their complaint, Plaintiffs alleged that RRHA violated the Brooke Amendment of the United States Housing Act of 1937, 42 U.S.C. § 1437a (1983), and its implementing regulations, 24 C.F.R. §§ 865.470–.482 (1983), in that it had set the utility allowances unreasonably low and failed to revise them, so that RRHA might collect greater excess consumption surcharges from the majority of tenants. They also claimed that RRHA had disregarded federal law prescribing how such allowances are to be maintained. The Brooke Amendment provides that public housing tenants be charged no more than twenty-five to thirty percent of their adjusted income for rent, which by definition includes an established amount of utilities.[2] Plaintiffs based their claims for relief upon 42 U.S.C. § 1983 and the lease contracts between Plaintiffs and Defendant RRHA.

On May 14, 1984, Defendant RRHA moved for judgment on the pleadings, pursuant to Rules 12(c) and (h)(2) of the Federal Rules of Civil Procedure. In its motion, RRHA challenges the legal sufficiency of plaintiffs' cause of action. RRHA asserts that: 1) the plaintiffs have no private right of action under the Brooke Amendment

and that enforcement depends solely on the action of the United States Department of Housing and Urban Development ("HUD"), 2) the Housing Act does not create any substantive rights which would allow the plaintiffs to proceed under § 1983, and 3) HUD is an indispensable party to the action and the plaintiffs' failure to join it mandates dismissal. Since matters outside the pleadings have been submitted to and considered by this court, the defendant's motion shall be treated as one for summary judgment and disposed of in accordance with Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(c), 56.

## I.

## INTRODUCTION

In *Home Health Services, Inc. v. Currie,* 706 F.2d 497 (4th Cir.1983), a provider of home health services brought suit against a physician and the state medical university for alleged violations of the Medicare Act, 42 U.S.C. § 1395a (1983), and federal civil rights statutes. The Fourth Circuit Court of Appeals found that Home Health had no implied right of action under the Medicare Act, and went on to state that "the conclusion that Home Health has no right of action ... under 42 U.S.C. § 1395a compels the conclusion that Home Health likewise has no cause of action under §§ 1983 and 1985." *Home Health,* 706 F.2d at 498.[3] Thus this court feels that under the Fourth Circuit's analysis, a determination of whether the plaintiffs have been deprived of "rights, privileges, or immunities" within the meaning of § 1983[4] should begin

---

**1.** On August 10, 1983, this action was certified as a class action, the class being comprised of tenant families in seven projects of public housing in the City of Roanoke.

**2.** Gross rent is the amount of rent chargeable to a tenant for the use of the dwelling accommodation, equipment, ... services, and Utilities not to exceed the Allowances for PHA-Furnished Utilities.... 24 C.F.R. § 865.472. Allowances for Public Housing Authority ("PHA")-Furnished Utilities represent the maximum consumption units (e.g. kilowatt hours of electricity) which may be used by a dwelling unit with-

out a surcharge for excess consumption against the tenant. 24 C.F.R. § 470.

**3.** The Fourth Circuit cited *Perry v. Housing Authority of ·City of Charleston,* 664 F.2d 1210, 1217–18 (4th Cir.1981) as standing for this conclusion.

**4.** 42 U.S.C. § 1983 provides, in relevant part, that:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected,

with a determination of whether an implied right of action exists under the Brooke Amendment.

## II.

## PRIVATE RIGHT OF ACTION UNDER THE BROOKE AMENDMENT

■ In determining whether a private right of action may be implied from a statute when legislation does not provide expressly for such a remedy, a court must focus on congressional intent. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 377, 102 S.Ct. 1825, 1838, 72 L.Ed.2d 182 (1982). Since 1975, the prevailing standard for determining whether Congress intended to imply such a right of action is that set forth in *Cort v. Ash*:

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted" ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal laws?

422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted). Although later cases favored a somewhat different but related approach, *see, e.g.*, *Transamerica Mortgage Advisor, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), the Supreme Court has recently reaffirmed the use of the *Cort* analysis.

any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

*Daily Income, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 839, 78 L.Ed.2d 645 (1984).

The first inquiry under *Cort* is whether Congress intended to create a special class of beneficiaries which includes the plaintiffs, and, if so, whether Congress intended to confer federal rights upon such beneficiaries. In construing sections 1437c and 1441, two general policy sections of the Housing Act, the Fourth Circuit Court of Appeals determined that: "First, the purpose of the legislation was to help the states; second, the purpose in helping the states was ultimately to benefit low income families. Thus the legislation had two beneficiaries-states as direct beneficiaries and low-income families as indirect beneficiaries." *Perry v. Housing Authority of City of Charleston*, 664 F.2d 1210, 1213 (4th Cir.1981). The *Perry* court also found that "[t]here is clearly no indication in the legislation or in [the] history [of the Housing Act] that Congress intended to create in public housing tenants a federal right of action against their municipal landlords." *Id.*

The court, combining factors three and four of the *Cort* analysis, determined that:

it would plainly be inconsistent with any legislative scheme in the federal legislation to imply a private cause of action where the legal right involved is one traditionally left to state law. It would be hard to find an area of the law in which the states have a greater interest or have had greater involvement than in the legal area of landlord-tenant.

*Id.* at 1216. Thus, the court held that there was no implied cause of action under the Housing Act against a local housing authority.

■ In applying the *Cort* analysis to the provisions of the Brooke Amendment, this court sees no reason to deviate from the conclusions reached by the Fourth Circuit in *Perry*. The Brooke Amendment provided, at the time this suit was filed:

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(a) Dwelling units assisted under this Act shall be rented only to families who are lower income families at the time of their initial occupancy of such units. A family shall pay as rent for a dwelling unit assisted under this Act the highest of the following amounts, rounded to the nearest dollar:

1) 30 per centum of the family's monthly adjusted income;

2) 10 per centum of the family's monthly income; or

3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payment which is so designated.

42 U.S.C. § 1437a(a) (1983). This relevant portion of the Brooke Amendment sets a limit on rent chargeable to tenants of low income housing. By definition, this rent includes utilities in an amount not to exceed that set by the Housing Authority, 24 C.F.R. §§ 860.403(a), 865.472 (1983), and approved by HUD. 24 C.F.R. § 865.473 (1983). The Brooke Amendment provisions apply only to lower income families who rent "dwelling units *assisted* under [the United States Housing] Act [of 1937]." 42 U.S.C. § 1437a(a) (1983) (emphasis added). Plaintiffs concede that the Housing Authority operates "its projects with federal subsidy pursuant to an Annual Contribution Contract"[5] from HUD, and that "HUD retains general enforcement authority." Plaintiffs' Brief in Support of Summary Judgment p. 3, 18. Thus, although low income families are certainly one of the beneficiaries of the Brooke Amendment, they are not the only beneficiaries. Consistent with the other provisions of the Housing Act, "the legislation had two beneficiaries—states as direct beneficiaries and low-income families as indirect beneficiaries." *Perry*, 664 F.2d at 1213.

■ Although finding that an implied right of action existed under the Brooke Amendment against HUD, the United States Court of Appeals for the Sixth Circuit, in *Howard v. Pierce*, 738 F.2d 722 (6th Cir.1984), "could discern no justification for extending such a cause of action to a public housing agency...." *Id.* at 730. In so holding, the Sixth Circuit, applying the second *Cort* factor, found that "nowhere in the legislative history ... [was there] an expression of intent either to provide or deny a private means of enforcing the Brooke Amendment." *Id.* at 727. As the Fourth Circuit determined in *Perry*, "Congress need not fear that unless it specifically denies a cause of action, the courts will automatically imply one; when Congress is silent there is no presumption in favor of a legislatively created cause of action." *Perry*, 664 F.2d at 1213. Thus, under the *Cort* analysis, this court holds that there exists no implied right of action under the Brooke Amendment against a public housing authority such as RRHC.[6]

### III.

### CAUSE OF ACTION UNDER 42 U.S.C. § 1983

■ 42 U.S.C. § 1983 provides for the redress of deprivations of rights secured by the United States Constitution or statutes under color of state law. Though there is no constitutional right to the housing involved here and thus no constitutional violation, *Lindsey v. Normet*, 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972), the Supreme Court has recognized that a § 1983 action may be based solely upon a

---

5. Annual Contributions Contract ("ACC")
   A contract (in the form prescribed by HUD) for loans and annual contributions whereby HUD agrees to provide financial assistance and the PHA agrees to comply with HUD requirements for the development and operation of a public housing project.
   24 C.F.R. § 841.103 (1983).

6. Other courts have reached a similar conclusion. See *Howard v. Pierce*, 738 F.2d 722 (6th Cir.1984); *McGhee v. Housing Authority of City of Lanett*, 543 F.Supp. 607 (M.D.Ala.1982); *Jackson v. Housing Authority of City of Fort Myers*, No. 82–136–CIV–A.N.–17 (M.D.Fla. April 4, 1984).

violation of a federal statutory right. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In order to prevail under a purely statutory-based § 1983 claim, however, the court must determine "[f]irst, whether Congress, in enacting the statute, manifested in the statute itself an intent to foreclose its private enforcement [and] [s]econd, whether the statute is of a kind aimed at creating enforceable 'rights' under § 1983." *Phelps v. Housing Authority of Woodruff,* 742 F.2d 816, 820 (4th Cir.1984); *Middlesex City Sewage Authority v. National Sea Clammers Association,* 453 U.S. 1, 17, 20, 101 S.Ct. 2615, 2624–2626, 69 L.Ed.2d 435 (1981). Failing either of these, there can be no cause of action under § 1983. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1 at 18, 101 S.Ct. 1531 at 1540, 67 L.Ed.2d 694 (1981).

An analysis of the language of the statute itself shows that there is no explicit denial of private enforcement; however, this court is of the opinion that Congress has evinced, in the implementing regulations of the Brooke Amendment, an intent to foreclose private enforcement. The implementing regulations provide two means by which utilities may be provided: PHA-Furnished Utilities and Tenant Purchased Utilities.

Allowances for PHA-Furnished Utilities represent the maximum consumption units (e.g., kilowatt hours of electricity), which may be used by a dwelling unit without a surcharge for excess consumption against the tenant. Allowances for Tenant-Purchased Utilities represent fixed dollar amounts which are deducted from the Gross Rent otherwise chargeable to a tenant who pays the actual Utility charges directly to the Utility suppliers whether they be more of [sic] less than the amounts of the Allowances.

24 C.F.R. § 865.470 (1983). These regulations provide for relief from excess charges of both PHA-Furnished and Tenant Purchased Utilities where a possible defect in the utility meter or error in the meter reading is involved, and in the case of PHA-Furnished utilities, if there is a defect in the dwelling. 24 C.F.R. § 865.481(a)(1), (a)(2) (1983). However, requests for relief from excess consumption on the grounds "that the utility consumption exceeds the applicable Allowance by 20 percent or more for reasons other than wasteful or unauthorized usage" are permitted "[i]n the case of Tenant-Purchased utilities only." 24 C.F.R. § 865.481(a)(3) (1983). Since the HUD regulations permit such requests for relief to be submitted to the PHA solely in the case of Tenant-Purchased Utilities, it is clear that such requests are foreclosed in a case such as this involving PHA-Furnished Utilities. Because Congress has "manifested an intent" to foreclose private enforcement, the plaintiffs have no enforceable rights within the meaning of section 1983 against a public housing authority such as RRHC.

■ Secondly, although the Brooke Amendment clearly manifests congressional intent to benefit generally tenants of public housing, its chosen means of accomplishing that end is for HUD, rather than the tenants themselves, to enforce the statutory requirements. RRHA operates its projects with federal subsidies pursuant to an Annual Contributions Contract ["ACC"] "whereby HUD agrees to provide financial assistance and [RRHA] agrees to comply with HUD requirements for the development and operation of a public housing project." 24 C.F.R. § 841.103.[7] Plaintiffs allege that RRHA has failed to follow federal law prescribing how utility allowances are to be set and maintained. If RRHA has indeed breached any of the conditions of the Annual Contributions Contract,

---

**7.** Section 5(1) of the Annual Contributions Contract between HUD and RRHA also provides that "[t]he Local Authority shall ... operate all Projects covered by this Contract in compliance with all provisions of Contract and all applicable provisions of the [United States Housing]

Act [of 1937]...." Section 311 allows HUD to inspect and to audit all the books, documents, papers, and records of the Local Authority that are pertinent to its operations with respect to financial assistance under the Act.

HUD has "the right ... to maintain any and all actions at law or in equity against the Local Authority to enforce the correction of any such default or to enjoin any such default or breach." HUD Annual Contributions Contract § 508. "In sum, the whole of the legislative scheme ... indicates Congress's intention that HUD should continue to enforce required conditions by means of asserting its rights under the ACC, thereby intending 'to foreclose private enforcement' of the requirements of the Housing Act." *Phelps v. Housing Authority of Woodruff,* 742 F.2d 816, 821 (4th Cir.1984).

Even were the implementing regulations of the Brooke Amendment and the provisions of the ACC found not to foreclose private enforcement, the Fourth Circuit Court of Appeals has determined that in order for a violation of a federal statute to create "rights, privileges, or immunities" within the meaning of § 1983, it must at the least be of a kind that gives rise to an implied cause of action. In *Perry,* the court determined that the Housing Act did not create rights enforceable in private actions under § 1983. Although it could be argued that the provisions involved here are more specific than those in *Perry* and thus create such enforceable rights, this court must reject such a narrow interpretation of *Perry* in view of the fact that the Court of Appeals did not specifically limit its ruling to the provisions involved.[8] If there were any doubt as to the principle enunciated in *Perry,* it was dispelled by the holding in *Home Health* that "the conclusion that Home Health has no [implied] right of action ... under 42 U.S.C. § 1395a *compels* the conclusion that Home Health likewise has no cause of action under

§§ 1983 and 1985." *Home Health,* 706 F.2d at 498. (emphasis added).

Because this court finds that the plaintiffs have failed to state a cause of action under 42 U.S.C. § 1983,[9] the defendant's Motion for Summary Judgment must be GRANTED. Each side shall bear its own taxable costs. An accompanying order shall be entered this day.

The Clerk of Court is directed to send certified copies of this opinion to counsel of record.

---

**8.** In *Phelps,* the Fourth Circuit Court of Appeals also declined to limit its holding in *Perry,* when it stated that "[a]lthough it might be argued that *Perry* is distinguishable, since the preference and notice rights [here] are more specific ... we are not persuaded that this distinction is of sufficient moment to alter our conclusion that the defendants' actions did not deprive the plaintiffs of any 'rights secured by the ... laws of the United States.' "

**9.** Since this court finds that the plaintiffs have failed to state a claim under § 1983, it is unnecessary to determine whether HUD is an indispensable party to the action. This court also dismisses the plaintiffs' cause of action based on the defendant's alleged breach of its lease agreements with the plaintiffs, under the doctrine of pendant jurisdiction as set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).