648 F.2d 110
 Ms. Barbara HAYES et al., Plaintiffs-Appellees,
v.
HUMAN RESOURCES ADMINISTRATION OF the CITY OF NEW YORK,
Stanley Brezenoff, Commissioner et al.,
Defendants-Appellants,
and
City University of New York, a body corporate, Robert J.
Kibbee, Chancellor, et al., Defendants.
Anna VILLANUEVA, etc., Plaintiff-Appellee,
v.
Barbara BLUM, as Commissioner of the New York State
Department of Social Services, et al., Defendants-Appellants,
and
Patricia Roberts Harris, as Secretary of the United States
Department of Health and Human Resources, Defendants.
Carmen WARREN and Michelle Warren, Plaintiffs-Appellees,
v.
Stanley BREZENOFF, individually and as Commissioner, et al.,
Defendants- Appellants,
and
Patricia Roberts Harris, individually and as Secretary, et
al., Defendants.
 No. 927, Docket 80-6369.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 19, 1981.
Decided May 5, 1981.
 
 1
 Robert A. Forte, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N. Y., George D. Zuckerman, New York City, of counsel) for State defendants-appellants.
 
 
 2
 David B. Rigney, Gen. Counsel, New York City (CUNY, Laura Blank, New York City, of counsel) for defendant-appellee, the City University of New York.
 
 
 3
 George E. Hairston, New York City (N.A.A.C.P.) for plaintiffs-appellees Barbara Hayes, Cerise Jones, Marion Brown, Regina Campbell.
 
 
 4
 John C. Gray, Jr., Brooklyn, N. Y. (Brooklyn Legal Services Corp., Gretchen L. Sprague, Brooklyn, N. Y., of counsel) for plaintiff-appellee Anna Villaneuva.
 
 
 5
 Before Van GRAAFEILAND and MESKILL, Circuit Judges, and STEWART, District Judge.*
 
 STEWART, District Judge:
 
 6
 The crux of the issue presented in this case is whether the definition of "necessary educational costs" for students who receive grants under the Aid to Families with Dependent Children ("AFDC") program is to be determined pursuant to federal regulations promulgated by the Commissioner of Education under the Higher Education Act of 1965, Title IV, Pub.L. 89-329, 20 U.S.C. §§ 1070-1089 ("Higher Education Act") or by the New York State Department of Social Services ("DSS") in accordance with its own more restrictive definition of need. The district court below, in a thorough and thoughtful opinion, held that DSS's administrative directive instituting, inter alia, the practice of recalculating an AFDC student's educational expenses pursuant to its own standard of need interfered with controlling federal statutes and regulations and is thus invalid. For reasons set forth in the opinion of the district court and elaborated on below, the decision and order enjoining the challenged policy and practice is affirmed.
 
 BACKGROUND
 
 7
 Plaintiffs-appellees in this consolidated action are recipients of grants under two separate but intersecting programs. They receive state and federal educational assistance grants coordinated under the Higher Education Act and implementing regulations, and financial assistance under Title IV of the Social Security Act, known as AFDC, 42 U.S.C. §§ 601-644. Plaintiffs in Hayes v. City University of New York are City University of New York ("CUNY") students who receive AFDC grants as well as SEEK (the Search for Education, Elevation and Knowledge program) and CD (the College Discovery Program) stipends. The named plaintiff in Villanueva v. Harris is an AFDC recipient whose benefits are reduced because of federal and state educational assistance received by her daughter, a student at CUNY. Plaintiffs in Warren v. Brezenoff are a CUNY student who receives educational assistance pursuant to the Higher Education Act and her mother, an AFDC recipient whose family's grant is reduced because of the daughter's educational grants. The three cases were consolidated before Judge Sofaer, and present the same issues concerning the validity of the challenged administrative directive. The former Department of Health, Education and Welfare ("HEW"), now the Department of Health and Human Services and a defendant in this action, joins in appellees' position in this action, as does CUNY.
 
 Title IV of the Higher Education Act
 
 8
 The Higher Education Act was enacted in large part to provide financial assistance to students "of exceptional need who, for lack of such a grant, would be unable to attain the benefits of a post-secondary education" and to provide incentives for qualified students from low income families to obtain post-secondary education. 20 U.S.C. § 1070(a). See 1965 U.S.Code Cong. & Adm.News 4053-4067. The Act was intended to provide "the highest level of coordination among all types and levels of student assistance programs," including federal, state and private programs. Id. at 4055.
 
 
 9
 To this end, the Commissioner of Education ("Commissioner") is charged with the responsibility of carrying out programs to achieve the goals of the Act, 20 U.S.C. § 1070. However, the district court noted:
 
 
 10
 the individual educational institutions play the critical role in the federal educational assistance system. Acting pursuant to federal regulations, each participating institution administers the federal programs for its students by constructing individual aid packages. To participate in the federal programs, the institution must agree to comply with governing statutes and regulations.
 
 
 11
 80 Civ. 2613, 503 F.Supp. 946, 949 (S.D.N.Y.1980). See 45 C.F.R. §§ 174.14, 175.14, 176.14.
 
 
 12
 For the individuals constituting the class of plaintiffs in the instant action, the individual financial aid package consists of a composite of grants from different sources. The participating educational institution is obligated to apply standards of need, eligibility and education costs established by the Commissioner for these programs. Federal regulations also specify the sources of income that must be taken into account in calculating the student's available income and resources. See 45 C.F.R. §§ 174.14, 175.14, 176.14. The amount of the student's educational grants is the difference between the educational cost and expected family contribution, determined in accordance with methods or figures prescribed by the Commissioner. Id. §§ 174.12, 174.13, 175.12, 175.13, 176.12, 176.13. This amount includes AFDC benefits in the calculation of available resources.
 
 
 13
 The structure of the educational assistance program was set forth in the opinion of the district court:
 
 
 14
 The financial aid package is built upon the so-called Basic Grant. Basic Educational Opportunity Grant program ("BEOG"), 20 U.S.C. § 1070a; 45 C.F.R. Part 190 (1979). Determining the amount of that grant entails two steps. First, the student applies for aid to the Commissioner of Education. The Commissioner calculates the applicant's expected family contribution and issues a student eligibility report, which specifies the proportion of the maximum BEOG award that the applicant may receive. 45 C.F.R. §§ 190.11-190.16 (1979). The applicant then submits the student eligibility report to the financial aid office at the student's school for calculation of the actual grant. Id. §§ 190.61-190.67. That office determines the student's cost of attendance pursuant to a formula promulgated by the Commissioner having three elements: tuition and fees, room and board, and a $400 allowance for books, supplies, and miscellaneous expenses. Id. §§ 190.51-190.55. The financial aid office then awards a grant of whichever of the following amounts is smallest: the difference between $1800 and the expected family contribution; 50 percent of the cost of attendance; or the difference between the cost of attendance and the expected family contribution. Id. §§ 190.62-190.63. The grant may never exceed one-half of the student's financial need, with an absolute maximum of $1800.
 
 
 15
 If the Basic Grant fails to satisfy the student's educational costs, the financial aid office completes the student's package with additional federal and state grants and loans. Among the federal programs are the Supplemental Educational Opportunity Grant program ("SEOG"), 20 U.S.C. § 1070b; 45 C.F.R. Part 176 (1979), the Guaranteed Student Loan Program ("GSLP"), 20 U.S.C. § 1071; 45 C.F.R. Part 177 (1979), the National Direct Student Loan program ("NDSL"), 20 U.S.C. § 1087aa; 45 C.F.R. Part 174 (1979), and the College Work Study program ("CWS"), 42 U.S.C. § 2751; 45 C.F.R. Part 175, Subpart A (1979). The state programs include the Tuition Assistance Program ("TAP"), the Search for Education, Elevation and Knowledge program ("SEEK"), and the College Discovery program ("CD").
 
 
 16
 Calculating need for purposes of these federal and state programs differs from calculating the BEOG. The cost of education includes tuition and fees, room and board, books and supplies, transportation, miscellaneous personal expenses, and expenses for the support of the student's dependents. Id. §§ 174.11, 175.11, 176.11. These expenses are based upon Bureau of Labor Statistics data on the cost of living at the low-moderate standard of living. The cost budget is submitted for approval by the Commissioner of Education. TAP awards are given to defray tuition for needy and able students. SEEK and CD awards are for supplementary assistance, and are based on the same cost of living standard used in distributing federal funds.
 
 
 17
 The regulations also specify several sources of income that must be considered in calculating the student's available resources. Id. §§ 174.14, 175.14, 176.14. The student's financial need is the difference between his cost of education and his expected family contribution. In calculating that contribution, the office must apply either the figure used by the Commissioner in determining the BEOG or a method of analysis approved by the Commissioner. Id. §§ 174.12, 174.13, 175.12, 175.13, 176.12, 176.13.
 
 
 18
 One feature of these assistance programs is especially relevant to this litigation: the safeguards against excessive awards. Every institution must appoint a coordinating official for its federal and nonfederal financial aid programs. Federal regulations forbid an institution from awarding NDSL, CSW, or SEOG if the award, in conjunction with all other resources, will exceed the student's need. Should the student's financial aid for any reason exceed his needs, the institution must adjust the financial aid to eliminate the excess. Id. §§ 174.14, 175.14, 176.14. (footnotes omitted).
 
 
 19
 503 F.Supp. at 951.
 
 
 20
 Calculation of Income under the AFDC Program
 
 
 21
 Appellees also receive financial assistance under AFDC. This program is intended to furnish financial assistance and rehabilitation to needy, dependent children and their families who live with and care for them. See 42 U.S.C. § 601 (1968). The AFDC program is funded by federal, state and local governments with the largest support from federal funds, but is administered by the states. DSS is the agency primarily responsible for administering the AFDC program that provides appellees in this action with benefits. Participating states are obligated to submit plans that comply with federal statutes and regulations, and failure to do so may result in termination of federal funds. 42 U.S.C. §§ 602, 604.
 
 
 22
 The district court described the requirements imposed by amendments to the Higher Education Act and the HEW regulations adopted pursuant thereto:
 
 
 23
 In determining an applicant's eligibility for AFDC benefits and the level of his assistance, the state must take into account the income and resources available to him. (42 U.S.C.) § 602(a)(7); 45 C.F.R. § 233.20(a)(1), (a)(3) (ii) (1979); see 18 N.Y.C.R.R. § 352.16(a) (1979). Not all income, however, is to be considered in determining need; several types of funds are excluded from the definition of income. 45 C.F.R. § 233.20(a)(3)(iv), (a)(4)(ii) (1979).
 
 
 24
 Two of the exclusions are at the core of this litigation. The first will be referred to as the "restricted-aid exclusion." The applicable HEW regulation requires:
 
 
 25
 "A State plan for AFDC must (iv) Provide that, in determining the availability of income and resources, the following will not be included as income: (b) loans and grants, such as scholarships, obtained and used under conditions that preclude their use for current living costs "Id. (45 C.F.R.) § 233.20(a)(3)(iv)(b). New York's DSS has adopted a corresponding regulation:
 
 
 26
 "No part of a scholarship, grant or other such income that is necessary to cover the cost of necessary or essential school expenses (e. g., tuition, books, fees, equipment, special clothing needs, transportation to and from school, and childcare services necessary for school attendance), and is actually so used, shall be considered as income in determining need and amount of assistance."
 
 
 27
 18 N.Y.C.R.R. § 352.16(d)(1) (1979).
 
 
 28
 The second provision, referred to herein as the "federal-aid exclusion," states as follows:
 
 
 29
 "A State Plan AFDC must (ii) Provide that, in determining eligibility for public assistance and the amount of the assistance payment, the following will be disregarded as income and resources: (d) Any grant or loan to any undergraduate student for educational purposes made or insured under any program administered by the Commissioner of Education "
 
 
 30
 45 C.F.R. § 233.20(a)(4)(ii) (1979). Promulgation of that regulation was required by Congress in section 507 of the Higher Education Amendments of 1968, Pub.L. 90-575, 82 Stat. 1063 (1968). DDS has adopted a virtually identical regulation. 18 N.Y.C.R.R. § 352.16(d)(2) (1979).
 
 
 31
 503 F.Supp. at 951.
 
 DSS Administrative Letter 77 ADM-134
 
 32
 This case arises out of the issuance by DSS of an Administrative Directive, 77 ADM-134 (Dec. 10, 1977) ("77 ADM-134"), which altered prior practices used by DSS in the calculation of an AFDC grant to a student. Prior to December 30, 1977, the policy and practice concerning the treatment of educational grants in determining eligibility and benefits for AFDC were governed by DSS Administrative Letter 75 ADM-89 (Aug. 22, 1975). That directive provided that "(A) grant or loan to an undergraduate student for educational purposes made or insured by the U.S. Commissioner of Education (BEOG, College Work Study, Guaranteed Student Loans, National Defense Student Loans and Supplementary Educational Opportunity Grants) shall not be considered as income or resources in determining need and amount of assistance." Necessary educational expenses were to be deducted from non-federal grants (e.g., SEEK, SAVE, TAP, College Discovery Program) and any remainder was to be considered as income for AFDC purposes. DSS applied the standard of necessary educational costs determined by CUNY, the financial institution to which plaintiffs submitted their applications for educational assistance.
 
 
 33
 On December 30, 1977 the Department issued a new directive, 77 ADM-134, which altered DSS's treatment of educational grants and benefits in several significant respects. First, it directed DSS employees to apply necessary and essential school expenses
 
 
 34
 against the total amount of the monies received for educational purposes. When such monies are in excess of expenses, the expenses are applied first against the exempt monies (i. e. funds from federally administered programs) and then against non-exempt monies. Any balance which represents funds from non-exempt programs or other sources are available resource which must be utilized to reduce or eliminate the need for public assistance and care.
 
 
 35
 77 ADM-134 at 3 (emphasis in original).
 
 
 36
 As the district court noted, this change by itself would not have had any effect on the amount of assistance given to AFDC students and their families:[1]But a second change occurred at or near the time of the directive's issuance. Previously, DSS had respected the CUNY standard financial aid budget as to what constituted necessary educational expense. After adopting 77 ADM-134, DSS began to use its own figures in calculating which expenses are "necessary and essential" for purposes of determining available income. See Memorandum of Law in Support of State Defendants' Motion for Summary Judgment at 20. The difference between these two budgets CUNY's and DSS's accounts for the persistent findings by DSS that students have excess educational assistance that can be applied to reduce AFDC benefits.
 
 503 F.Supp. at 952.[2]
 
 37
 Finally, 77 ADM-134 provides that any balance of non-federal benefits, including TAP grants, that remains after applying necessary and essential school expenses against the total of educational benefits received, are "an available resource which must be utilized to reduce or eliminate the need for public assistance and care." Id. at 3.
 
 Issues on Appeal
 
 38
 Appellees claimed and the district court found that 77 ADM-134 is invalid in that it contravened state and federal law in three respects.[3] First, the district court found that DSS's method of calculating income by first allocating educational costs to federal grants violated the federal-aid exclusion provision; second, that the redefinition of expenses by DSS interferes with the federal educational assistance scheme established pursuant to the Higher Education Act; and third, that the inclusion of TAP grants in the calculation of income violates the restricted aid exclusion.
 
 
 39
 DSS challenges the holdings of the district court primarily on the following grounds: first, DSS asserts that the dismissal by the Supreme Court of Lumpkin v. Dept. of Social Services, 45 N.Y.2d 351, 408 N.Y.S.2d 421, 380 N.E.2d 249 (1978), appeal dismissed, 439 U.S. 1040, 99 S.Ct. 713, 58 L.Ed.2d 700 (1979) ("Lumpkin" ) for lack of a substantial federal question disposes of this claim. However, the issue of the redefinition of necessary educational expenses was not actually claimed by the plaintiff in Lumpkin, nor was it decided in the Court of Appeals decision before the Supreme Court. Furthermore, as Judge Sofaer notes in footnote 13 of his opinion granting the injunction, HEW has now taken a position opposing DSS's actions in the context of the challenge to the redefinition by DSS of necessary educational expense, contrary to the situation in Lumpkin.
 
 
 40
 DSS's second argument on appeal is that it is required by law to take into account income and resources in determining need for public assistance, citing 42 U.S.C. § 602. However, this argument merely restates the issue of whether DSS's or the Commissioner's determination of educational costs is to prevail. In all of the state and federal regulations concerning the proper treatment of educational grants, the term "necessary educational costs" is used. Nowhere is it stated that DSS is the appropriate governmental agency to define "necessary educational costs." Appellant's position is without merit, for the reasons stated below.
 
 Failure to Disregard Federal Funds
 
 41
 The district court found that DSS's method of calculating whether there were excess grants constituting income violated the federal aid exclusion provision. It reached its decision by interpreting the policies behind the federal-aid exclusion as reflected in the "sparse" legislative history and the language of the statute, and then determining that the administrative directive on its face and as applied frustrates those policies. 503 F.Supp. at 954. Specifically, Judge Sofaer found that the exclusion was intended to prevent interference with federal educational assistance programs and to preserve the joint federal-state structure of the AFDC program. With respect to the statutory language, it was held to be significant that the regulation requires that federal educational assistance be "disregarded", as opposed to "not included". This was interpreted to mean that federal funds must not even be considered in evaluating a recipient's need; "exclusion from the income column is not sufficient." Slip op., supra, at --.
 
 
 42
 We do not find the language of the statute and regulation instructive as to whether the method used to calculate excess benefits in itself violates the exclusion provision. The statute amending the Higher Education Act, Section 507 (1968), states that "no grant or loan shall be considered to be income or resources." The distinction between the language of the regulation requiring that federal educational grants be disregarded and the language in the other regulations and section 507 does not necessarily give rise to the interpretation adopted by the district court.
 
 
 43
 As a practical matter, the validity of the calculation policy turns not on the order of allocation to state versus federal grants, but rather on the recalculation of AFDC students' budget by DSS. As the district court noted, the allocation of costs first to federal funds probably would not have had any effect without the accompanying change in computation of need. The purposes of the federal-aid exclusion are frustrated not by the method of calculation itself, but by its use in conjunction with the adoption by DSS of a lower student budget than that provided under the Higher Education Act's educational assistance program. The discussion by the district court of the impact of the method of calculation on federal funding indeed demonstrates how the use of the lower budget frustrates congressional intent. Thus, the validity of DSS's method of calculating income cannot be realistically evaluated in isolation from the practice of redefining "necessary educational costs".[4]
 
 
 44
 Redefinition of Necessary Educational Costs
 
 
 45
 It is not disputed that DSS employs a more restrictive standard to determine financial need than do the educational institutions pursuant to federal regulations. Some items included in the calculation of need under the federal educational scheme, such as expenses for room and board and support of students' dependents, are absent from DSS calculations. Other items are included in DSS computations, "but at stringently low levels". 503 F.Supp. at 960. The impact of the redefinition is illustrated by the separate expense budget that CUNY indicates will be implemented should 77 ADM-134 be upheld.[5]
 
 
 46
 We agree with the district court's conclusion that the DSS policy of redefining students' educational assistance budget conflicts with the language and intent of the Higher Education Act and implementing regulations and the 1968 amendments to that statute. As Judge Sofaer illustrated in his discussion of the federal aid exclusion, this takes into account, at least indirectly, grants made and administered by the Commissioner of Education, in violation of the federal-aid exclusion, 45 C.F.R. § 233.20(a)(4)(ii)(d) (1979) and the corresponding state regulation, 18 N.Y.C.R.R. § 352.16(d)(2).[6]
 
 
 47
 The district court also discerned that by redefining the AFDC expense budget, DSS is replacing the Commissioners' and Congress' definition of educational need with those of the state welfare agency, contrary to the provisions in the Higher Education Act and implementing regulations requiring that the Commissioner "determine the actual cost of attending an institution and prescribe regulations to be used by schools in calculating student need. See, e. g., 20 U.S.C. § 1070(a)(2)(B)(iv); id. § 1070b 1(a)(2)(c)' 42 U.S.C. § 2754(a)(3)(A)." 503 F.Supp. at 960. The practice also interferes with Congress' intent to enable low income students to complete higher education.[7] Moreover, the DSS policy frustrates congressional intent, as reflected in the language of the federal aid exclusion and the legislative history of the Higher Education Act, to preserve the joint federal-state structure of the AFDC program and the educational assistance scheme. See 1965 U.S.Code Cong. & Adm.News at 4055. As the district court indicated, the budgetary redefinition in effect allows DSS to supplant its own income grant with federal educational funds.
 
 
 48
 In several other significant respects, the state's redefinition directly frustrates the goals stated in the legislative history of the Higher Education Act and reflected in the statute. To the extent that programs are intended to encourage achievement by low income students by awarding grants based on merit, the DSS policy may undermine that goal by correspondingly reducing the student's AFDC grant, thereby resulting in no actual increase. Also, the educational assistance program appears to be targeted at children from large families who, in part because of family size, are likely to have fewer available resources. See, e. g., 1965 U.S.Code Cong. & Adm.News at 4056. The AFDC determination, which is proportionally lower per person as family size increases past a certain fixed level, see 18 N.Y.C.R.R. §§ 352.1-352.3, detracts from the intended impact of the federal educational assistance program.
 
 
 49
 Finally, Judge Sofaer correctly found that DSS's redefinition of necessary educational costs discourages individuals from participating in a program that Congress expressly favors. DSS concedes that its definition of necessary educational cost is premised on reducing expenditures. The Commissioner's definition of necessary educational costs is more likely to reflect accurately the costs essential to obtaining an education. In other cases dealing with expenses related to activities encouraged by Congress and embodied in legislative entitlements states have been forbidden from adopting overly restrictive definitions of expenses of eligible individuals which do not reflect actual expenditures. See, e. g., Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974) (overturning fixed grant of work-related expenses); Elam v. Hanson, 384 F.Supp. 549, 553 (N.D.Ohio 1974) (invalidating inclusion of funds or discouraging recipients from seeking higher education). We also find it significant that HEW, responsible for administering AFDC programs, concurs in this assessment.
 
 
 50
 The district court properly concluded that the State's recalculation violates the language and spirit of the federal educational assistance scheme.
 
 
 51
 Improper Consideration of Restricted State Funds
 
 
 52
 Appellant's claim that the court below erred in its holding that, as a matter of law and fact, DSS's treatment of TAP grants as income violated the restricted aid exclusion is similarly unpersuasive. The district court discussion of the TAP program amply demonstrates that TAP grants may only be used for tuition, so that their inclusion in the computation of income violates the restricted-aid exclusion. Furthermore, the court's finding that TAP funds are not available for current living costs is clearly supported by the record.[8]
 
 
 53
 We conclude that the district court sensitively and correctly determined that the policy and practice embodied in 77 ADM-134 violate federal law, and are thus invalid. The judgment is affirmed.
 
 
 
 *
 Hon. Charles E. Stewart, Jr., of the Southern District of New York, sitting by designation
 
 
 [1]
 Even in situations where the combined federal and state educational grants would exceed necessary educational expenses, as defined by the Commissioner, the amount of financial aid would not be affected by order of the allocation. The federal educational assistance program requires that the coordinating official for each institution adjust students' grants to eliminate any financial aid in excess of necessary educational costs. 45 C.F.R. §§ 174.14, 175.14, 176.14. See 503 F.Supp. at 950
 
 
 [2]
 When DSS promulgated this new policy concerning the treatment of educational grants and benefits, CUNY created a separate student financial aid budget for public assistance students. This budget was designed to incorporate the DSS standard of need so that the difference resulting from DSS's lower standard of need would not be covered by educational assistance programs coordinated under the Higher Education Act. Appellees in Hayes v. Human Resources Administration sought and obtained temporary injunctive relief, and CUNY thereafter agreed to refrain from implementing the new budget pending determination of this litigation. CUNY, a defendant in this action, supports appellees' position and argues in favor of affirmance
 
 
 [3]
 Plaintiffs also challenged the administrative directive on Equal Protection and Due Process grounds in the court below. The court found the directive invalid on statutory grounds and thus properly declined to reach the constitutional claims
 
 
 [4]
 Appellants rely heavily on a New York Court of Appeals decision in Lumpkin v. Dept. of Social Services, 45 N.Y.2d 351, 408 N.Y.S.2d 421, 380 N.E.2d 249 (1978), appeal dismissed, 439 U.S. 1040, 99 S.Ct. 713, 58 L.Ed.2d 700 (1979) as a defense of 77 ADM-134. As noted by the district court in footnote 13 of the opinion below, plaintiffs in Lumpkin challenged only the practice of allocating first the federal and then the state educational grants. The New York Court of Appeals did not address the issue of the validity of the DSS practice of redefining AFDC students' educational costs. Thus, this issue was not before the Supreme Court in Lumpkin
 
 
 [5]
 See n.2, supra
 
 
 [6]
 The District Court determined that:
 Far from disregarding federal funds, this policy takes them fully into account, albeit in a roundabout way. A simple example illustrates. Assume that a student receives $100 in state aid and has an educational need, according to DSS standards, of $150. If that student then receives $100 in federal aid, his AFDC benefits will drop by $50; DSS will offset his educational need by the amount of federal aid, thereby reducing it to $50. Similarly, if this student had initially received $100 in state aid and $50 in federal, and his federal aid increases by $5, he will have an excess of $5 (for his need will be reduced to $145). Plainly, the amount of resources available for AFDC purposes is directly correlated with the student's federal grants in violation of the disregard requirement. (footnote omitted).
 
 
 [503]
 F.Supp. at 955
 
 
 [7]
 The legislative history of the Higher Education Act indicates that a significant part of the act was specifically directed at individuals likely to be covered under AFDC (e. g. persons with income under $3000, single mothers). This intent is reflected in statutory directions concerning the treatment of AFDC and social security grants in computing expected family contribution. See 45 C.F.R. § 190.33a
 
 
 [8]
 DSS again relies on Lumpkin v. Dept. of Social Services, supra, to refute the district court's decision. The issue of the proper treatment of TAP grants was not presented in Lumpkin, because plaintiffs in that case stipulated that, for the purposes of that proceeding, TAP funds could be used to offset need. Appellees strongly oppose that position in this action. Thus, the disposition in Lumpkin is inapposite. See 503 F.Supp. at 956 n.13