**Vicki WHITE, et al., individually and on behalf of all persons similarly situated, Plaintiffs,**

v.

**Samuel R. PIERCE, Jr., in his official capacity as Secretary of Housing and Urban Development, et al., Defendants.**

**Civ. No. 83–3114.**

United States District Court, D. Idaho.

Feb. 24, 1986.

---

Maurice O. Ellsworth, U.S. Atty., D. Idaho, Richard K. Willard, Acting Asst. Atty. Gen., Sheila Lieber and Merril Hirsh, Dept. of Justice, Civ. Div., Washington, D.C., for defendants Pierce and Heckler.

Steven M. Stoddard, Deputy Atty. Gen., Boise, Idaho, for defendant Idaho.

Richard A. Skinner, Skinner, Fawcett & Mauk, Boise, Idaho, for defendant Idaho Housing.

Andrew C. Thomas, Idaho Legal Aid Services, Inc., Caldwell, Idaho, Randall Robinson, Idaho Legal Aid Services, Inc., Lewiston, Idaho, for plaintiffs.

## I. BACKGROUND

RYAN, District Judge.

This action is brought by recipients of the Aid to Families with Dependent Children (AFDC) program, who reside in housing leased under the lower-income housing assistance program. The principal contention made by the plaintiffs is that regulations promulgated by the Idaho Department of Health and Welfare (IDHW) and Housing and Urban Development (HUD) violate federal law because they require the plaintiffs to pay rent which exceeds the maximum prescribed by statute. The statute which the plaintiffs assert has been violated is 42 U.S.C. § 1437a(a), which reads:

A family shall pay as rent for a dwelling unit assisted under this Act ... the highest of the following amounts, rounded to the nearest dollar:

(1) 30 per centum of the family's monthly adjusted income;

(2) 10 per centum of the family's monthly income; or

(3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

HUD applies the welfare rent exception [Section 1437a(a)(3)] to those families receiving AFDC in Idaho. HUD applies the welfare rent exception in Idaho by setting the housing cost at the sum of the greatest amount of housing and utility allowance that a family could receive. Once HUD calculates a family's housing costs by adding the AFDC maximum housing and utility allowances, it rateably reduces this amount by fifty-five percent. This is the maximum which could be paid in Idaho and is the rent which the family actually pays.

Once the amount of rent to be charged the recipient is calculated, IDHW then computes the standard of need. The standard of need is the "yardstick for measuring who is eligible for public assistance." *Rosado v. Wyman,* 397 U.S. 397, 408, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970). The State of Idaho calculates the AFDC grants by combining an amount for basic needs that is conditioned on family size and the sum for housing and utility allowance that has been set by HUD. The sum of these figures is then added together and multiplied by a percentage, the fifty-five percent rateable reduction that Idaho employs to limit AFDC expenditures. By multiplying the rateable reduction percentage by the standard of need, the State determines the "payment standard." A recipient's AFDC grant is his/her payment standard, less countable income. Countable income is income other than the AFDC grant, such as earnings. *See* Idaho Department of Health and Welfare Regulation M.S. 3–1372.-01(e)(1).

Plaintiffs essentially make two contentions in their Complaint. The first argument is that IDH & W's regulation M.S. 3–1372.01(e)(1) and HUD's acquiescence in the Department's regulation at 24 C.F.R. § 889.105 violates federal housing law by requiring those recipients of AFDC to pay rent which exceeds the maximum which is

statutorily allowed by 42 U.S.C. § 1437a(a). The second contention presented by plaintiffs is HUD's method of determining the housing costs for that class of plaintiffs whom are "grandfatherees" (i.e., who have resided in federally subsidized housing prior to August 1, 1982) because it requires plaintiffs to pay rent in excess of the maximum prescribed by 42 U.S.C. § 1437a(a). Plaintiffs contend that HUD's regulation at C.F.R. § 889.104(a)(6) presumes income attributable to the grandfatherees which is not available, and thereby causes plaintiffs' rent to exceed the statutory maximum. In effect, it is the same regulatory mechanism, though with somewhat different calculations, which plaintiffs seek declared invalid with regard to both grandfatherees and non-grandfatherees. The parties agree that this action boils down to a case of statutory construction.

Defendants have moved this court for judgment on the pleadings and plaintiffs have moved for summary judgment. Matters outside the pleadings having been presented and not excluded by the court in regard to the motion for judgment on the pleadings, it has been treated as a motion for summary judgment in accord with Rule 56. Fed.R.Civ.P. 12(c). As the parties agree, there are no material issues of fact in dispute in the case at bar. This case is fundamentally a question of statutory interpretation to be determined as a matter of law.

## II. STANDARD OF REVIEW

■ The regulations and procedures that are challenged in this case can be set aside only if such regulations and procedures are found to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or if they violate statutory, procedural, or constitutional requirements. 5 U.S.C. § 706(2); *Arizona Past and Future Foundation, Inc. v. Lewis*, 722 F.2d 1423, 1425 (9th Cir.1983). The court must consider whether there has been a clear error of judgment and is not empowered to substitute its judgment for that of the agency. *See Citizens to Preserve Overton Park,*

*Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

## III. ANALYSIS

Plaintiffs argue that the wording of this statute requires the plaintiffs to pay in rent no more than they actually receive for rent. Both parties appear to agree that the amount of rent to be paid is that amount established by HUD. Under the present regulations, the rent which the tenant actually pays is the rent set by the HUD regulations and calculated by the housing unit owner. The plaintiffs, in their Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction (March 21, 1984, at 33–34), state that: "The Department must pay the amount designated by HUD as the plaintiff's housing cost if compliance with the United States Housing Act's maximum rent statute, most particularly the welfare rent exception at 42 U.S.C. § 1437a(a)(3) is to be achieved." Plaintiffs further argue that the statute contemplates that IDHW will provide the tenant with the specific amount necessary to pay the rent as set by HUD. In other words, the plaintiffs claim that the statute requires a pass-through of funds between the agencies, in effect exempting the plaintiffs from the State's rateable reduction that it normally applies, and rendering them financially indifferent toward a rent set at more than thirty percent of adjusted gross income. Therefore, the plaintiffs contend that when Idaho applies its rateable reduction to the amount of rent set by HUD and included in the standard of need calculation, it violates the United States Housing Act.

Rent which a family must pay pursuant to 42 U.S.C. § 1437a(a)(3) is that amount set by HUD. The rent figure determined through the HUD calculations is the figure used by the State in determining the standard of need. The amount of assistance paid by the State is paid without any restrictions on its use: "Money payments are payments in cash, checks, or warrants immediately redeemable at bar, made to the grantee or his legal representative with no restrictions imposed by the agency on the

use of funds by the individual." 45 C.F.R. § 234.11(a). When Congress passed this statutory provision, no portion of the actual amount paid to an AFDC recipient was designated for any specific item such as rent, food, or clothing. Since an amount for shelter is only designated from the standard of need computation, the phrase "specifically designated" must be that amount designated in that standard of need computation.

The plaintiffs do not dispute that a state has the option to rateably reduce the level of benefits paid to a recipient in an effort to limit AFDC expenditures. *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). However, plaintiffs argue that a state may not employ a rateable reduction scheme when it results in a violation of a statute. In this case, plaintiffs complained that Idaho's use of the rateable reduction, with respect to the housing component, violates the United States Housing Act.

■ · A state is not required to provide benefits that are equal to the actual needs of a recipient. Under the Social Security Act provisions for aid to families with dependent children, 42 U.S.C. § 601, *et seq.*, the level of benefits to be paid is within the judgment of the state, so long as some aid is provided to all eligible families with eligible children. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). The policy of IDHW in rateably reducing AFDC benefits is authorized by Idaho Code § 56–210. Plaintiffs do not contest the legality of the regulations as they relate to administration of the Social Security Act, but rather, challenge the regulations as they interact with the United States Housing Act.

Plaintiffs must prove that the administration of the Social Security Act by way of the regulations of Health and Human Services, the Idaho Code, and the regulations of IDHW, caused the alleged illegal administration of the Housing Act as they interact. However, the statute refers solely to the question of the rent which the family must pay and nowhere poses any restriction or limitation upon the benefits provided by the state agency. If Congress had intended to require the rent under 42 U.S.C. § 1437a(a) to be the amount "actually available," it certainly could have expressly so stated. The housing statute merely establishes a scheme to determine the rent to be paid. When the statute was enacted, Congress was aware that a limited number of states existed that were "as paid" rateably reduced states and, yet, did not provide an alternate calculation scheme for the states as plaintiffs would have this court do.

In 1969, public housing rents were limited, for most tenants, to no more than twenty-five percent of a family's income. *See* Pub.L. No. 91–152, § 213(a), 83 Stat. 389, 395 (1969), commonly referred to as Brooke I. This amendment was to remedy the inability of welfare recipients to live in subsidized housing. In 1971, Congress provided that all tenants would pay no more than twenty-five percent of income and that "a public agency shall not reduce welfare assistance to any tenant ... as a result of any reduction in rent resulting from the application of the the the [twenty-five percent of income ratio]." Pub.L. No. 92–213, § 9, 85 Stat. 776 (1971). This amendment was commonly referred to as Brooke III. This amendment, however, allowed the welfare tenant in "as paid" states such as Idaho to keep the savings on shelter costs produced by the reduced rent and create a statutory windfall. The welfare rent measure was created in an effort to correct the problems raised by Brooke III. Pub.L. No. 93–383, § 201(a), 88 Stat. 654 (1974), now codified at 42 U.S.C. § 1437a(a). This provision effectively repealed Brooke III which had created two classes of families receiving public assistance, those living in public housing and those living outside of public housing. H.R.Rep. No. 1114, 93d Cong., 2d.Sess. 190 (June 17, 1974) (supplemental view of Mr. Koch on H.R. 15361). While plaintiffs may be correct in asserting that Brooke III, although repealed, permit-

ted the public housing agencies to return to the practice of negotiated rentals with welfare agencies, *Howard v. Pierce,* 738 F.2d 722, 729 (6th Cir.1984), nothing in the statute mandates negotiated rentals.

█ The plaintiffs assert that Congress, in enacting the welfare rent provision, only meant it to be used where the tenant would be fully subsidized for rent by the state. In other words, plaintiffs would not be subject to a rateable reduction on their housing allotment. This exception, urged by the plaintiffs, does not appear in the statute. Furthermore, plaintiffs' interpretation would lead to a preference which Congress attempted to avoid when it repealed Brooke III. If plaintiffs' interpretations are accepted, a preference to AFDC Section 8 tenants that is not available to AFDC tenants in private non-Section 8 housing would be created. The AFDC Section 8 tenants would not experience the reduction by the state in the amount of benefits (through rateable reduction) to which all other benefit recipients are subjected. Again, plaintiffs seek a pass-through which would only be applicable to them and which would create an exemption to the state's rateable reduction scheme not available to any other benefit recipients. The legislative intent indicates that plaintiffs' interpretation of the statutory provision is incorrect as it conflicts with Congress's wish to eliminate the inequities in the treatment of AFDC Section 8 tenants and AFDC tenants in private non-Section 8 housing.

While the parties argue vehemently about its import, the fact is that in 1983 Congress refused to adopt legislation that would reverse the Secretary's interpretations. While the court deems it to be of relatively minor weight, the failure of Congress to change the statute, when presented with the opportunity, further reinforces the Secretary's interpretation.

Finally, the plaintiffs attack the HUD regulations on the grounds that they assume "income which is unavailable." Specifically, plaintiffs challenge HUD's inclusion as "income" in 24 C.F.R. § 889.-104(a)(6) for the purposes of calculating the "rent" for Section 8 AFDC tenants pursuant to the "adjusted income" method, the rent set by HUD. HUD treats the maximum shelter component of the welfare grant rateably reduced once as part of the tenant's income. Plaintiffs' complaint is that this "income" calculation is unrealistic as the State will pay only a fraction of the shelter component established by HUD.

HUD has been given statutory authority to define "income" for the purpose of determining the rent for Section 8 tenants in 42 U.S.C. § 1437a(b)(4):

(4) The term "income" means income from all sources of each member of the household, as determined in accordance with criteria prescribed by the Secretary.

HUD is given discretion to define the term for purposes of the statutory computations. HUD's definition of "income" at 24 C.F.R. § 889.104(a)(6) is not inconsistent with 42 U.S.C. § 1437a. Furthermore, HUD's regulation is a rational attempt to determine income. Actual income for an AFDC recipient in an "as paid" rateably reduced state will not be determined until after the state agency applies its rateable reduction to a recipient's standard of need. This will establish a new income figure for the recipient. Of necessity, HUD's calculations precede the State's determination of its payment standards which are in part based upon the rental figures established by HUD. If plaintiffs' arguments were accepted, HUD would be forced to recalculate the recipient's income which would necessitate the State recalculating the recipient's standard of need. Plaintiffs' statement that this downward spiral would come to an end at the eighth recalculation affirms the fact that forcing such recalculations would render the statute unadministrable.

To summarize, the Housing Act created a scheme for determining rent to be charged to families living in certain subsidized housing. The statute was enacted to repeal previous enactments which created a preference for certain classes of tenants. The statute was enacted by a Congress that was aware of the Social Security Act

and regulations thereunder which allowed states to rateably reduce benefit payments, including those in "as paid" states. The statute provides for no exemptions or limitations to the payment schemes either expressly or implicitly. The statute does not require the "pass-through" sought by the plaintiffs. Under the current regulatory structure, the plaintiffs' rent is set pursuant to the welfare rent exception, which is the figure used by the State in its standard of need calculation. The State does not pay all of the standard of need, but instead, reduces all payments by fifty-five percent. These plaintiffs, like all other benefit recipients in Idaho, receive fifty-five percent of their determined need for all components of need. To exempt this limited class, and require payment of their full rental need, would create a preference and inequality specifically rejected by Congress in enacting 42 U.S.C. § 1437a. Therefore, the defendants' motion will be granted.