**Wanda TURNER, on Behalf of Herself and all Persons Similarly Situated, and Linda Orsborne, on Behalf of Herself and all Persons Similarly Situated, Plaintiffs,**

**and**

**Sandra Morgan, on Behalf of Herself and all Persons Similarly Situated, Plaintiff–Intervenor,**

**v.**

**Cesar PERALES, individually and as Commissioner of the New York State Department of Social Services, and Rita B. Otterbein, as Commissioner of the Wayne County Department of Social Services, Defendants.**

No. Civ. 86–705L.

United States District Court,
W.D. New York.

Sept. 21, 1988.

Bryan D. Hetherington, Monroe County Legal Assistance, Rochester, N.Y., Susan Ann Silberstein, Legal Assistance of the Finger Lakes, Geneva, N.Y., for plaintiffs.

William J. Goldman, Asst. Atty. Gen., Rochester, N.Y., Gary Lee Bennett, Lyons, N.Y., for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### I. Background

Plaintiffs in this action are recipients of New York State public assistance grants. They participate in the Aid to Families with Dependent Children (AFDC) program and the Home Relief program. Plaintiffs also reside in housing leased under the Section 8 Existing Housing Program, a federal plan. Under this program, the plaintiffs' rent is subsidized. On behalf of themselves and the class they seek to represent, plaintiffs challenge the manner in which defendants calculate their public assistance grants.

This matter is before the court on plaintiffs' consolidated motion for class certification and cross-motions for summary judgment. The parties have stipulated to a class certification, therefore this decision deals with the motions for summary judgment. As the parties agree, and as the record reflects, there are no disputed material issues of fact in this action. This case is fundamentally a question of statutory interpretation to be determined as a matter of law. *White v. Pierce*, 628 F.Supp. 932, 934 (D.Idaho 1986).

### A. The Section 8 Program

The Section 8 Existing Housing Program was created by the United States Housing Act of 1937, which was subsequently amended by the Housing and Community Act of 1974. 42 U.S.C. § 1437 *et seq.* The program has as its purpose "aiding lower income families in obtaining a decent place to live." 42 U.S.C. § 1437f. The program is administered by the United States De-

partment of Housing and Urban Development (HUD) through its area offices and local Public Housing Agencies (PHA).

Under the Section 8 program, a portion of an eligible family's rent is subsidized. This subsidy is paid directly to the landlord by the PHA. The remainder of the rent is the family's responsibility. The portion of the rent that a Section 8 family is required to pay is known as the "total tenant payment." The PHA will determine the total tenant payment. The total tenant payment is the greatest of one of the following: (1) for a family on public assistance, the amount designated by the Department of Social Services as housing costs, (2) thirty percent of adjusted gross income, or (3) ten percent of gross income. 42 U.S.C. § 1437a; 24 C.F.R. § 813.107. The subsidy which is paid to the landlord is found by deducting the total tenant payment from the rent. Thus, if the rent is $400, and the total tenant payment is calculated at $200, the subsidy would be $200. The landlord receives $200 from the tenant and $200 from the PHA.

When a family occupies subsidized housing where the rent does *not* include the cost of utilities, HUD establishes a "utility allowance" which is factored in as part of the total housing costs to the tenant. The PHA increases its payment to the landlord by the amount of the utility allowance which in effect provides the tenant with the resources to pay the utilities directly.

For example, if the rent is $400, and the utility allowance is $75, and if the total tenant payment has been set at $200, the PHA would pay $275 to the landlord. The tenant, whose total rent payment was established at $200, would pay the balance of the rent to the landlord, $125, and he would be expected to pay $75 for utilities.

### B. New York State Public Assistance Program & Section 8

Public Housing Agencies in New York administer the Section 8 program as described above, except in the case where the tenant is a recipient of public assistance who pays his utilities separate from his rent. This is the situation in the case at issue. In this situation, PHA's calculate the total tenant payment as contemplated by the statute and regulations. PHA figures are determined by using schedules provided by the Department of Social Services.

This state does not, however, pay the tenant the total tenant payment. It reduces the amount by the estimated "utility allowance." The result is that the tenant receives only the *actual* amount that the tenant has to pay to the landlord. For example, if rent is $400 without utilities, and the total tenant payment toward housing has been estimated at $200, with a $75 "utility allowance" estimated by HUD, the PHA would pay the landlord $275. However, in New York, the Department of Social Services only pays the tenant his actual outlay of $125 toward rent. Under this program, in New York, the tenant does not receive the $75 for the utility allowance.

New York, though, does provide various grants which are used to meet utility needs. An allowance is granted for fuel, when it is not included in the rent, 18 N.Y.C.R.R. § 352.5[a], and for water when payable as a separate charge, 18 N.Y.C.R.R. § 352.3[b]. Eligible families are entitled to a home energy grant, N.Y.Soc. Serv.Law § 131–a3–c, and may also receive a supplemental home energy grant, N.Y. Soc.Serv.Law § 131–a3–d. An undifferentiated portion of the basic public assistance grant is also available to meet any additional utility costs.

In short, it is clear that actual utility costs are paid for those on public assistance through these separate state programs.

### C. Plaintiffs' Complaint

Plaintiffs contend that Section 8 requires that their public assistance grant contain a shelter allowance equal to their rent plus the HUD "utility allowance." Plaintiffs claim that they are deprived of their full housing costs when defendants base their calculations on the rent actually paid. Plaintiffs maintain that New York State's calculations are in conflict with federal law and federal regulations that plaintiffs claim require the states to use a "total tenant

payment" which includes a "utility allowance" when calculating housing costs. As a result, plaintiffs claim that the shelter portion of their state public assistance grant is deficient. Plaintiffs make this claim even though the rent paid to their landlords does not include utilities and they receive various other utility grants from New York State.

Plaintiffs contend that defendants' action violates the federal law and regulations governing the Section 8 program, the Supremacy Clause of the United States Constitution (Article Six, Clause Two), as well as the Equal Protection Clause of the Fourteenth Amendment.

## II. Standard of Review

The regulations and procedures of New York State that are challenged in this action can be set aside only if such regulations and procedures are found to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or if they violate constitutional requirements. 5 U.S.C. § 706(2); *Arizona Past & Future Foundation, Inc. v. Lewis*, 722 F.2d 1423, 1425 (9th Cir.1983); *White v. Pierce*, 628 F.Supp. 932, 934 (D. Idaho 1986). The court must consider whether there has been a clear error of judgment. The court is not empowered to substitute its judgment for that of the agency. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *White, supra* at 934.

When a court reviews an agency's construction of a statute it is confronted with two questions. First, whether Congress has directly spoken to the precise matter at hand. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. If the intent of Congress is clear, under the Supremacy Clause, the court, as well as the agency, must give effect to the unambiguously expressed legislative purpose. *Id.* If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its

construction of the statute. *Id.* Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. *Id.* A court will normally give a state agency's regulations weight unless they are arbitrary, capricious or manifestly contrary to the statute. *Id.* Once a court is satisfied that Congress did not have a specific intention concerning the matter at hand and that the regulations are not arbitrary, capricious or manifestly contrary to the statute, all that is necessary to decide is whether the agency regulations in the context of the particular program are reasonable and not in violation of the Equal Protection clause. *Id.* at 844, 104 S.Ct. at 2782–83.

## III. Discussion

■ This case involves recipients of Section 8 Housing grants who participate in two programs: Home Relief and AFDC. AFDC is a cooperative state and federal program, under which the federal government reimburses participating states for a portion of their expenditures. Home Relief is entirely a New York State program, established and funded by the state. Thus, there are no federal statutes directly applicable to this program. New York is not prohibited from using only state funds, according to whatever plan it chooses, provided it violates no provision of the Constitution. *Rosado v. Wyman*, 397 U.S. 397, 420, 90 S.Ct. 1207, 1221–22, 25 L.Ed.2d 442 (1970). Grants made to recipients of Home Relief and AFDC are encompassed within the same New York statute and the same regulations. N.Y.Soc.Serv.Law § 131–a; 18 N.Y.C.R.R. § 352.3, § 352.5. Therefore, the analysis that follows will apply to both programs.

## A. Supremacy Clause

This court must decide whether the policy of Public Housing Agencies in New York State in not considering the entire "total tenant payment" as shelter costs when calculating a public assistance grant is invalid under the Supremacy Clause of

the United States Constitution because it conflicts with Section 8 of the National Housing Act. "Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Perez v. Campbell,* 402 U.S. 637, 644, 91 S.Ct. 1704, 1708, 29 L.Ed.2d 233 (1971).

New York Social Services Law section 131–a(1) provides that social service officials shall, in accordance with the provisions of this section and regulations of the department, provide home relief, veteran assistance, and aid to dependent children. This assistance is to be supplied to needy persons who constitute or are members of a family household, who are determined eligible in accordance with standards of need established in section 131–a(2). Subdivision two establishes the standards of need based upon the size of the family. In addition to the amounts established under subdivision two, the standard of need shall include amounts for shelter and fuel for heating, and amounts for home energy payments. N.Y.Soc.Serv.Law § 131–a(2)(b). State regulations calculate the rent allowance for those families participating in these programs. Each social services district shall provide a monthly allowance for rent in the amount actually paid, but not in excess of the appropriate maximum. 18 N.Y.C.R.R. § 352.3(a). The regulations provide schedules (one for shelter allowance with heat and one for allowance without heat) which list the maximum shelter allowance based on family size and social services district. The PHA's, when determining the total tenant payment, rely upon these schedules. There is no question that the social services district, and the PHA's involved are implementing the program according to New York Law. Plaintiff's claim is that New York law is inconsistent with and violates federal law.

Under the AFDC program, the Social Security Act in general gives each state great latitude in dispensing its available funds. 42 U.S.C. § 601 *et seq.* The Social Security Act has no specific mandate that any portion of a grant be allocated toward rent or utilities. The statute requires that some aid be provided to all eligible families and all eligible children. The statute does not require each family to receive a proportionate share of the total funds available. The level of benefits to be paid is within the judgment of the state. *Dandridge v. Williams,* 397 U.S. 471, 481, 90 S.Ct. 1153, 1159–60, 25 L.Ed.2d 491 (1970) (state maximum grant provisions were not prohibited by federal law). A state is not required to provide benefits that are equal to the actual need of a recipient. *White,* 628 F.Supp. at 935.

The policy behind the Federal Housing Act is to promote the general welfare of the nation by employing its funds and credit to assist the several states to remedy unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income and, consistent with the objectives of the Act, to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs. 42 U.S.C. § 1437.

In light of this policy, the Act establishes how much an eligible family must pay for rent when residing in an approved Section 8 dwelling. Also, consistent with legislative intent, the Act does not place any restriction or limitation upon the benefits provided by the state. *See* 42 U.S.C. § 1437 *et seq.;* 24 C.F.R. § 813 *et seq., see also White,* 628 F.Supp. at 935.

The regulations do not require a state to take into account a "utility allowance" when making calculations. The federal law merely establishes a scheme to determine the rent to be paid by the tenant. *White,* 628 F.Supp. at 935. The Code of Federal Regulations only requires HUD to establish a "utility allowance." Congress, though, has not *mandated* that the states provide such an allowance to eligible recipients.

When Congress does not address a certain issue, any attempt at a supremacy argument must fail. A state will be per-

mitted to implement its own program unless arbitrary, capricious or manifestly contrary to federal law. *White*, 628 F.Supp. at 934.

Under the federal regulations at issue here, if the rent does not include utilities, a "utility allowance" is factored into the total tenant payment. 24 C.F.R. § 813.102. This, in effect, increases the amount of the subsidy paid directly to the landlord by the amount of the utility allowance.

Plaintiffs' claim is that the federal regulations under 24 C.F.R. 813.107 *require* the PHA's to provide not only the tenant rent, but also turn over to the tenant the HUD estimated "utility allowance." A reading of the regulations, however, does not support this contention. In any event, New York law in this instance provides an allowance for rent actually paid, 18 N.Y.C.R.R. § 352.3, and a fuel for heating allowance estimated at 100 percent of need, 18 N.Y.C.R.R. § 352.5, together with other utility grants.

In light of these facts, New York law is not inconsistent with federal law. The New York program is also not inconsistent with legislative intent. The New York law does provide adequate housing for eligible lower income families. New York recipients are provided with a grant for rent in the amount actually paid or at an established statutory maximum. Plaintiffs have no complaint that rental payments are not being made, which is one of the primary purposes of the statute.

Plaintiffs, though, ask that New York be forced to use the maximum shelter allowance instead of the actual rent paid formula when making calculations. Congress, though, has not directed the states to act in this manner.

Plaintiffs' suggestion is also contrary to section 1437a(a)(3) which states that in calculating the rent to be paid, a public agency is to use the portion of a family's grant that is designated *by that agency* to meet the family's housing costs. Under New York law the agency is to use the actual amount paid for rent or a statutory maximum, whichever is less. 18 N.Y.C.R.R. § 353.3. Legislative intent is to provide sanitary and safe housing, not a windfall for recipients. In fact, under the New York programs recipients often receive a larger total utility grant than under the HUD estimate. New York's statute and regulations are consistent with legislative intent.

Plaintiffs also rely on 24 C.F.R. § 13.106(6)(ii) and the Federal Register for support. 24 C.F.R. § 813.106(6)(ii) states that when calculating income the welfare agency is to utilize the maximum amount that the *agency* could allow the family for shelter and utilities. This language refers to amounts the agency could allow under state regulations. The Code does not require these figures to be HUD's estimated "utility allowance" or the "total tenant payment." It would seem that if Congress wanted state agencies to use HUD figures, it would have said so.

Further, Plaintiffs claim that rent under the 1937 Act has been interpreted to mean gross rent, that is, rent including utilities. 49 Fed.Reg. 19935 (1984). This explanation is correct, and is consistent with legislative intent, when utilities are *included* in the rent payment. The explanation, though, is not binding when utilities are paid separately.

[F]or purposes of AFDC grant calculation, only the amount HUD designates as the family's "total tenant payment" shall be considered a rental or shelter payment. Payments in excess of the amount of the total tenant contribution which the AFDC unit may make to a utility company will not be considered as rental payments. This is because *the statute provides that only those utility payments which are made in lieu of a rental payment shall be considered as shelter payments.* The maximum payment that could be made to a landlord as rent is the "total tenant payment." Any remaining amount above the "total tenant payment" will be considered a payment for utilities. Of course, the amount the AFDC state agency includes in the grant for shelter *cannot exceed the State's AFDC maximum for shelter as authorized in the state plan.*

Implementation of § 221 of Pub.L. 98–181 as amended by Pub.L. 98–479, 52 Fed.Reg. 32324–25 (1987) (Emphasis added).

Plaintiffs also suggest that the Second Circuit decision in *Hayes v. Human Resources Administration*, 648 F.2d 110 (1981) requires a finding that New York's statute and procedure is contrary to federal law. *Hayes* dealt with educational grants under the Higher Educational Act, 20 U.S.C. § 1070 *et seq.*, and AFDC. The educational act regulations state that "[i]n determining an applicant's eligibility for AFDC benefits and the level of his assistance, the state must take into account the income and resources available to him." 42 U.S.C. § 602(a)(7); 45 C.F.R. 233.20(a)(1), (a)(3)(ii). Excluded from the income calculation were "loans and grants, such as scholarships, obtained and used under conditions that precluded their use for current living costs" and "any grant or loan to any undergraduate student for educational purposes made or insured under any program administered by the Commissioner of Education." 45 C.F.R. § 233.20(a)(3)(iv)(b), (a)(4)(ii). New York had determined that certain grants, which could only be used for tuition, would be counted as income for purposes of determining grants to students under AFDC. *Hayes*, 648 F.2d at 115–16. The Second Circuit found that the New York statute violated the federal statute and legislative intent which prevented educational grants and scholarships from being included as income. *Id.* at 117.

The case here is certainly distinguishable from *Hayes*. Federal law does not require New York to take into account a "utility allowance" when calculating public assistance grants. Furthermore, legislative intent is to provide safe and sanitary housing for eligible, lower income families. This intent is met in New York. PHA's provide rent subsidies under Section 8. The Department of Social Services provides a shelter allowance, 18 N.Y.C.R.R. § 352.3 and fuel for heating allowance, 18 N.Y.C.R.R. § 352.5. Again, federal law does not direct New York to do otherwise.

Moreover, for a state statute to be contrary to federal law, Congress' language must be explicit. It is not for the court or the parties to read into the Act or regulations some subtle legislative directive or intent that is not there. *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 20, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981).

When a state program involves the use of federal funds, case law recognizes that:

Congress may fix the terms on which it shall disburse federal money to the states. *See, e.g., Oklahoma v. CSC*, 330 U.S. 127 [67 S.Ct. 544, 91 L.Ed. 794] (1947); *King v. Smith*, 392 U.S. 309 [88 S.Ct. 2128, 20 L.Ed.2d 1118] (1968); *Rosado v. Wyman*, 397 U.S. 397 [90 S.Ct. 1207, 25 L.Ed.2d 442] (1970).... [L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the states agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the state voluntarily and knowingly accepts the terms of the "contract." *See Steward Machine Co. v. Davis*, 301 U.S. 548, 585–98 [57 S.Ct. 883, 890–96, 81 L.Ed. 1279] (1937); *Harris v. McRae*, 448 U.S. 297 [100 S.Ct. 2671, 65 L.Ed.2d 784] (1980). There can of course, be no knowing acceptance if a state is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. *Cf Employees v. Department of Public Health & Welfare*, 411 U.S. 279, 285 [93 S.Ct. 1614, 1618, 36 L.Ed.2d 251] (1973); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). By insisting that Congress speak with a clear voice, we enable the states to exercise their choice knowingly, cognizant of the consequences of their participation.

*Pennhurst*, 451 U.S. at 17, 101 S.Ct. at 1539–40.

In the area of housing grants, Congress has not spoken with a clear voice. At most, the states are provided with the following regulation:

"If the welfare assistance payment includes an amount specifically designated for shelter and utilities that is subject to adjustment by the welfare assistance agency in accordance with the actual cost of shelter and utilities, the amount of welfare assistance income to be included as income shall consist of: ...

(ii) The maximum amount that the welfare assistance agency could in fact allow the family for shelter and utilities."

24 C.F.R. § 813.106(6)(ii).

This regulation does not direct the states to add an allowance for utilities, when utilities are not included in the rent. Further, this section does not mandate that the HUD estimated "utility allowance" be used by the states. This statute is not like the statute discussed in *Hayes* where Congress was very explicit as to what was and was not to be considered as income. The statute merely instructs the agency to use an amount that the state could allow under its regulations. New York uses actual rental cost when the maximum allowance is higher and then adds to this figure a fuel for heating allowance pursuant to a separate program.

In summary, I find nothing in the Act, its regulations or its legislative history to suggest that Congress intended to require the states to consider the HUD "utility allowance" as a housing cost, to base the shelter allowance on the "total tenant payment," or to use the state maximum shelter allowance in computing the standard of need. Thus, New York's program does not violate the Supremacy Clause. Further, New York's law is not arbitrary, capricious or contrary to federal law or legislative intent.

### B. Equal Protection

Plaintiffs' final claim is that New York State's failure to include the "utility allowance" as part of the total tenant payment in one of two classes of calculations constitutes invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. New York provides the HUD estimated "utility allowance" to those families whose rent includes utilities. For eligible families whose utilities are separate from the rent, New York provides a separate shelter allowance and a fuel for heating allowance. Plaintiffs contend that the separate treatment of the classes and the inclusion of a "utility allowance" in one class and "fuel for heating allowance" in the other for purpose of income calculations is an equal protection violation.

The United States Supreme Court has found that in the area of social welfare a state does not violate the Equal Protection Clause simply because the classifications made by its laws are imperfect. *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). "If the classification has some reasonable basis, it does not offend the Constitution merely because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Id.; Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1910). "The problems of government are practical ones and may justify, if they do not require, rough accommodations. *Dandridge, supra, citing, Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1912). A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *Dandridge, supra, citing, McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). The Fourteenth Amendment gives the federal courts no power to impose upon the states their views of what constitutes wise social policy. *Dandridge, supra.*

In *Dandridge* the state placed a $250.00 per month limit on AFDC grants regardless of family size. The Court, in finding that this did not violate equal protection, noted "we need not explore all the reasons that the state advances in justification for the regulation." *Id.* The legislative classification need only bear a rational relationship to a legitimate interest. *Roundtree v. Berger*, 420 F.Supp. 282, 283–84 (E.D.N.Y. 1976), *aff'd per curiam*, 430 U.S. 912, 97 S.Ct. 1322, 51 L.Ed.2d 590 (1977) (legislative purpose to conserve limited public resources was sufficient). New York's inter-

est in treating the two classes separately is to provide eligible families with a grant based on their *actual* needs. Thus, when utilities are paid separately from the rent, New York provides a separate allowance for fuel based upon need. It is a legitimate state interest to treat the classes differently. New York's separate fuel calculation will provide a fuel supplement which will be more accurate than the estimated HUD "utility allowance." Moreover, because both groups are treated very similarly in that both receive a grant that in the long run covers rent and utilities, the Equal Protection Clause is not violated.

### *Conclusion*

New York's policy of not considering a "total tenant payment" including a "utility allowance" as rent when calculating a public assistance budget, its not considering HUD's "utility allowance" as a housing cost; and its use of actual rent paid instead of a maximum shelter cost does not violate the Supremacy Clause of the United States Constitution. Congress has not clearly mandated that states participating in the Section 8 program are to use such procedures. Further, New York's program is not contrary to legislative intent to provide safe and sanitary housing to eligible, lower income families. Finally, New York's program does not constitute an Equal Protection violation because a legitimate state interest exists where separate classes are established in order to allow the state to make allowances for rent and utilities based upon need.

Therefore, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.

SO ORDERED.